FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Penn Square Bank, N.A., Plaintiff,

v.

Bill P. JENNINGS, et al., Defendants.

No. CIV–84–1612–W.

United States District Court, W.D. Oklahoma.

July 30, 1985.

Richard B. Noulles, Charles C. Baker, David L. Bryant, Gable & Gotwals, Tulsa, Okl., Charles C. Green and Robert Turner, Turner, Turner, Green & Braun, Oklahoma City, Okl., for Bill P. Jennings.

John Goodman, Oklahoma City, Okl., for John R. Preston.

John W. Vardaman, Jr., Washington, D.C., Peter B. Bradford, Bradford, Haswell & Jones, Oklahoma City, Okl., for Carl W. Swan.

Richard Talley, and L. Keye Farrar, Norman, Okl., for Eldon L. Beller.

Gary R. Underwood, Bush & Underwood, Oklahoma City, Okl., for C.F. Kimberling, Sr.

Burck Bailey, Warren F. Bickford, IV, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for William G. Patterson.

J. William Conger, James C. Prince, Hartzog, Conger & Cason, Earl D. Mills, Mills, Whitten, Mills & Mills, Oklahoma City, Okl., Edwin D. Scott, Peat, Marwick, Mitchell & Co., William E. Hegarty, Mathias E. Mone, Dean Ringel, Cahill, Gordon, & Reindel, New York City, for Peat, Marwick, Mitchell & Co.

Ross Arbiter, Stanley W. Levy, Weinberg, Zipser, Arbiter & Heller, Erwin E. Adler, Carol Lynch, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., Gene A. Castleberry, Robert A. Wiener, Oklahoma City, Okl., for Professional Asset Mgt. Inc. and Its Officers and Stockholders.

Gary A. Bryant, G. Blaine Schwabe, III, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., Larry K. Griffis, Butzell, Keidan, Simon, Myers & Graham, Detroit, Mich., for Michigan Nat. Bank, N.A.

James W. Bill Berry, Oklahoma City, Okl., Wilmer Cutler Pickering, Washington, D.C., for Ronald H. Burks.

Phillip F. Horning, Horning, Johnson & Grove, Judson M. Fink, Oklahoma City, Okl., for Richard T. Dunn.

James A. Kirk, Kirk & Chaney, Oklahoma City, for Bill Stubbs.

Robert C. Margo, Oklahoma City, for Marvin K. Margo, M.D.

Harold M. Durall, Oklahoma City, Okl., for Frank L. Murphy.

John E. Green, Asst. U.S. Atty., Oklahoma City, Okl., for United States.

Joan M. Bernott, Special Litigation Counsel, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Mark S. Simonian, K. Phillip Knierim, Wood, Lucksinger & Epstein, Los Angeles, Cal., for Ronald P. James and Stephen L. Roe. David T. Hedges, Jr., Vinson & Elkins, Houston, Tex., James E. Work, Shirk, Work, Robinson & Williams, Oklahoma City, for Elizabeth Merrick Coe, Gary M. Cook, Richard C. Haugland, Jerry Richardson, Gene H. Smelser, Ken L. Kenworthy, James G. Randolph and W.A. Ross.

ORDER

LEE R. WEST, District Judge.

Applicant in Intervention, First Penn Corp. ("First Penn" or "FPC") was the single bank holding company for Penn Square Bank, N.A. FPC is now in bankruptcy and Penn Square is now in the receivership of the FDIC. The pending con-

solidated suits involve, inter alia, alleged irregularities in Peat Marwick's audit of Penn Square and alleged liability of the bank's officers and directors. FPC has moved to intervene in the consolidated actions pursuant to Rule 24(a)(2) Fed.R.Civ.P. FPC's Motion is opposed by the Receiver, Peat Marwick, and PAM, all principal parties in the existing litigation.

## DISCUSSION
### FPC's Proposed Initial Complaint

FPC's proposed complaint in intervention adopts almost all of the FDIC's claims against Peat Marwick and the bank directors. First Penn also asserts a cause of action against Peat based on an inaccurate finding of real property ownership concerning an 8.5 acre tract in Oklahoma City. The real property claim is completely extrinsic to the subject matter of the existing litigation, and intervention is DENIED on the real property claim for that reason. The balance of this Order will address FPC's interests in other claims.

■ The criteria established by the Tenth Circuit for intervention under Rule 24(a)(2) are:

1. Whether the applicant claims an interest relating to the property or transaction which is the subject of the existing litigation;

2. Whether the claimant is so situated that disposition of the litigation may, as a practical matter, impair or impede its ability to protect that interest;

3. Whether applicant's interest is adequately represented by existing parties. *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission,* 578 F.2d 1341, 1343 (10th Cir.1978).

In addition, there is a fourth criterion of timeliness. *Restor-A-Dent Dental Lab v. Certified Alloy Products, Inc.,* 725 F.2d 871 (2nd Cir.1984).

■ The applicant's "interest" in the litigation need not be an outright ownership interest in the disputed property nor even a primary role in the disputed transaction, so long as the outcome will significantly affect the claimant's interest. *Cascade Nat-*

*ural Gas Corp. v. El Paso Natural Gas Company,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), *reh. den.,* 399 U.S. 937, 90 S.Ct. 2225, 26 L.Ed.2d 809 (1970). Our Circuit requires "that the interest asserted ... must be a specific legal or equitable one" in order to qualify for "protection" under the rule. *Rosebud Coal Sales Company v. Andrus,* 644 F.2d 849, 850 n. 3 (10th Cir.1981) (citing *Allard v. Frizzell,* 536 F.2d 1332, 1333 (10th Cir.1976) and *Donaldson v. U.S.,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971).

■ First Penn's financial interest in the pending litigation is obvious; to the extent the present suits establish liability for damages to Penn Square Bank, liability is thereby determined for the diminished value of Penn Square as FPC's primary asset. The Receiver's estate also consists of Penn Square's assets. The Receiver filed suit in 84–1612 on behalf of the Bank's depositors and creditors. First Penn, through its Trustee in Bankruptcy, seeks to intervene for the benefit of its shareholders (i.e., the holding company's) and creditors. The value of FPC's stock is so closely linked to the value of Penn Square Bank that the community of interests between First Penn and the FDIC, as identified in the proposed complaint in intervention, cannot seriously be doubted.

However, this very identify of interests between the Receiver and First Penn Corp. raises the question of whether FPC's interests are not already adequately represented in the lawsuit by the Receiver. We must also inquire whether First Penn's interests will be "impaired" if its intervention is denied. There appear to be conflicting lines of case law on certain aspects of these questions.

The Tenth Circuit has indicated that while an applicant in intervention bears the burden of showing impairment, that burden is "minimal" or "slight" (*National Farm Lines v. ICC,* 564 F.2d 381, 383 (10th Cir. 1977), and it is satisfied if the applicant shows that the representation "may be" inadequate. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n.

10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). Our Circuit does not limit "impairment" to immediate adverse legal consequences:

> "The court may consider any significant legal effect in the applicant's interest ... hence, the stare decisis effect might be sufficient to satisfy the requirement."

*Natural Resources Defense Council,* 578 F.2d at 1345;[1] *Accord, Nuesse v. Camp,* 385 F.2d 694, 702 (D.C.Cir.1967); *Atlantis Development Corp. v. U.S.,* 379 F.2d 818, 826-829 (5th Cir.1967).

Other courts expressly limit stare decisis as an "impairment" and hold applicants to a higher standard. Such cases state that if the applicant's potential for recovery is not contingent on the outcome of the existing litigation, then the applicant's interest is not impaired to an extent warranting 24(a)(2) intervention. *Francis v. Chamber of Commerce of the United States,* 481 F.2d 192 (4th Cir.1973); *In re Penn Central Commercial Paper Litigation,* 62 F.R.D. 341, 346-347 (S.D.N.Y.1974), *aff'd. sub. nom.; Shulman v. Goldman, Sachs & Co.,* 515 F.2d 505 (2nd Cir.1975); *see also Blake v. Pallan,* 554 F.2d 947, 954 (9th Cir.1977) (stare decisis problem "greatly lessened" if position of existing parties on pertinent issues same as position of applicant in intervention.)

The identity of interests shared by the estate of Penn Square Bank and the estate of First Penn Corporation satisfies either of the impairment theories discussed above because recovery to the Bank's estate will have a direct financial impact on the size of First Penn's estate. Having found that FPC satisfies the interest and impairment criteria, we turn next to the adequacy of FDIC's representation of FPC's interests, and it is there that First Penn falters.

1. *Natural Resources Defense Council* was invoked in *Rosebud Coal,* where the court held that a first party's voluntary adoption of standards contained in a second party's government contract did not warrant the first party's intervention of right in the second party's contract dispute with the government. *Rosebud* and *Cascade* indicate that the 24(a)(2) impairment requirement may be satisfied by evidence of the litigation's adverse effect on an applicant's position in the economic marketplace. However, as

*National Farm Lines* recognizes the general possibility that a government agency may not adequately represent a private entity's interests when both government and private enterprise are involved in common disputes or transactions. 564 F.2d at 383-384. Nevertheless, a close reading of that case and the authorities on which it relies indicates to this Court's satisfaction that the general rule does not apply to the situation at bar, where both the government receiver and the private applicant in intervention are pursuing identical theories of recovery (by virtue of the applicant's adoption of the government's pleadings.) *Contrast Arco v. Standard Oil,* 304 F.2d 387 (D.C.Cir.1962) (private industry's interests justified intervention in government import quota litigation); *General Motors Corp. v. Burns,* 50 F.R.D. 401 (D.Hawaii 1970) (interest of government licensing authority recognizably different from interest of licensed auto dealers). The fact that FDIC and FPC may be at odds with each other over "slicing the pie" as to recovery does not mean that they are in conflict as to the litigation itself; indeed, FPC launched its campaign for intervention with the allegation that "its claim is based on the same transaction as the subject of this action, i.e., the audit of Peat Marwick Mitchell (of Penn Square Bank)" (FPC's motion to intervene at ¶ 7, April 22, 1985) and the assertion that "certainly in the instant case, there exists the requisite community of interests and privity of estate" between Penn Square Bank and First Penn Corp. (FPC Memorandum of Law at 7, June 17, 1985).

FPC's theory that it is entitled to intervene because its claim against Peat is in the nature of a compulsory counterclaim to those asserted against it in 82-1357-W by

this Court reads *Rosebud,* its consideration of the intervenor's privity and voluntary adoption of the stake in controversy, as a gauge of its protectible interest, suggests a retrenchment to a narrower definition. In any event, the continued viability of marketplace "interest" and "impairment" is not involved, however, in the present context, since First Penn's identifiable interest in the estate of Penn Square Bank is an immediate stake in the controversy.

defendants Peat, Marwick, Blanton and York is without merit. As FPC itself is quick to point out, it was not properly made a party in 82–1357–W because of its stay in bankruptcy. It would be anomalous for First Penn to accord itself plaintiff status as to its own counterclaim while simultaneously invoking the bankruptcy bar as to other parties' counterclaims in the same litigation.

### FPC's Proposed Amended Complaint

■ During the pendency of First Penn's motion discussed above, a proposed amended complaint in intervention was filed. While the criteria for intervention under 24(a)(2) remain the same, the claims asserted in the amended complaint are sufficiently different from the proposed original pleading to merit separate consideration.

In essence, the amendment asserts Peat Marwick's negligence and malfeasance regarding the 8.5 acre tract; it contends that had Peat accurately audited Penn Square and conveyed a true picture of the Bank's financial condition to its holding company, then First Penn's directors would have compelled Penn Square to "mend its ways" and could have prevented some $65,000,000.00 in Penn Square loan losses; and it claims that if First Penn had known of Penn Square's financial situation, FPC would not have participated in some $65,000,000.00 in loans originated by Penn Square.

> "Had PMM promptly notified the entire (FPC) Board of Directors of the facts, circumstances, problems, and deficiencies herein allged [sic], and that PMM was withdrawing from the engagement and would decline to give any opinion with respect to the financial statements at December 31, 1981, the Board of Directors of First Penn, by virtue of their fiduciary duties and responsibilities, would have been required to take, and a majority of the Board of Directors (other than those named as defendants in this action) would and could have taken appropriate actions to have prevented the incurring of further liabilities and losses . . ."

FPC First Amended Complaint, ¶ 17 at 8 (July 5, 1985). The amended complaint alleges that FPC sustained damages of at least 127.9 million dollars as a result of Peat's actions.

As discussed above, the 8.5 acre property claim involves Peat's audit of First Penn Corp., not its audit of Penn Square Bank which is the gravamen of the parties' claims in 84–1612–W and 82–1357–W. The real property issue is not the same subject matter as the pending litigation and does not support intervention.

First Penn's claims regarding its Directors' potential corrective action that Peat allegedly forestalled through its audit are likewise distinguishable from existing theories of liability and existing "interests" in the pending suits. The nature of Peat's duties and the foreseeability of FPC's reliance are legally and conceptually distinct from the interests and issues asserted by the credit union plaintiffs in 82–1357–W and by the Bank's depositors and directors in 84–1612–W. *See Landy v. FDIC*, 486 F.2d 139, 167–169 (3rd Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974) (indicating that accountant liability turns on foreseeability of plaintiff's reliance). Separate and apart from potential problems with causation and limitations (which go to possible reasons for dismissal rather than to threshold questions of intervention), the amended complaint relies on different theories of liability, indicating a different and more narrowly defined interest in the litigation.

The distinction between First Penn's interest in the size of Penn Square's estate (which is the focus of the initial complaint in intervention), and its interest in its own financial investments and its own directors' liability (which is the basis of the amended complaint) is not articulated, but the Court finds the distinction analytically critical. The proposed amended complaint proceeds from an asserted fiduciary interest in the bank's management and a financial interest in First Penn's own loan participation portfolio, whereas the original complaint in intervention is focused on First Penn's derivative financial status based on the Bank's

diminished value. The issues of Peat's duties and liabilities toward the Bank's directors and depositors are theoretically different from the duty and liability issues toward the Bank's holding company, and these distinctions become crucial when the holding company's asserted interest in the litigation stems from its unique fiduciary and financial role.

In summary, the issues of duty, foreseeability, and notice as to First Penn Corp. are sufficiently different from those issues in the pending litigation as to warrant separate attention in a separate lawsuit. The fact that the same defendant is involved does not mean that the same interest or liability is at stake; if all accountant liability suits arising from Penn Square were consolidated, the conglomeration would be unmanageable. What First Penn Corp. and the existing plaintiffs have in common is their disappointment in Penn Square's financial performance, but failed expectations are not the sole or sufficient barometer of common interests sufficient to justify intervention under Rule 24(a)(2).

To the extent that doctrines of estoppel and res judicata apply to common questions of fact, First Penn may find that it can avail itself of some aspects of the pending suits, but First Penn's interests as the Bank's holding company and its legal theories based on that status will not be impaired. *Lake Investors Development Group, Inc. v. Egidi Development Group,* 715 F.2d 1256, 1260 (7th Cir.1983) ("impairment" exists if decision of legal question would foreclose intervenors' rights in subsequent proceeding). Intervention of right is DENIED as to First Penn Corp.'s proposed amended complaint because the interests asserted therein are substantively different from those asserted by the present parties.

### Permissive Intervention

Although First Penn Corp. did not cast its motion under Rule 24(b) allowing permissive intervention, in the interest of finality the Court will briefly address that issue. Permissive intervention lies in the Court's discretion, and "in exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b)(2). The factors of delay and protracted discovery are significant, in light of the existing elaborate pretrial schedule in the consolidated cases, and such factors warrant denial of permissive intervention. *Restor-A-Dent Dental Labs,* 725 F.2d at 876–877; *Francis v. Chamber of Commerce.*

### CONCLUSION

The Motion to Intervene of First Penn Corporation is DENIED.