816 F.2d 1488
 55 USLW 2667, 7 Fed.R.Serv.3d 619
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Penn
Square Bank, N.A., Plaintiff-Appellee,
v.
Bill P. JENNINGS, et al., Defendants-Appellees,
Peat, Marwick, Mitchell & Company, a partnership, Additional
Party Defendant-Appellee,
Kenneth L. Spears, as Trustee for First Penn Corporation,
Proposed Intervenor-Appellant.
 No. 85-2411.
 United States Court of Appeals,
Tenth Circuit.
 April 29, 1987.
 
 Ted N. Pool of Sherman, Pool, Thompson, Coldiron & Blankenship, Del City, Okl., for proposed intervenor-appellant.
 David L. Bryant (Charles C. Baker and Richard B. Noulles also of Gable & Gotwals, Tulsa, Okl., with him on the briefs) for plaintiff-appellee Federal Deposit Ins. Corp.
 Victor M. Earle, III (William E. Hegarty and Allen S. Joslyn, also of Cahill Gordon & Reindel, New York City, and J. William Conger of Hartzog, Conger & Cason, Oklahoma City, Okl., on the briefs) for defendant-appellee Peat, Marwick, Mitchell & Co.
 Ross Arbiter, Stanley Levy and Barbara Brown of Weinberg, Zipser, Arbiter, Heller & Quinn, Los Angeles, Cal., Erwin E. Adler and Carol W. Lynch of Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., and Gene A. Castleberry and Robert A. Weiner of Castleberry & Kivel, Oklahoma City, Okl., filed a brief for third party defendants-appellees Professional Asset Management, Inc., James C. Chafee, William Goldsmith, Susan K. Holly and Judith A. Davidson.
 Before LOGAN, ANDERSON, and TACHA, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 In this appeal we review a district court order denying intervention of right under Fed.R.Civ.P. 24(a)(2). The case is one of many arising out of the Penn Square Bank, N.A. (Penn Square) insolvency.
 
 
 2
 In June 1984, the Federal Deposit Insurance Corporation (FDIC), as appointed receiver for Penn Square, filed suit against certain former officers and directors of Penn Square for breach of fiduciary duty. The FDIC amended its original complaint in December 1984 to join the public accounting firm of Peat, Marwick, Mitchell & Co. (Peat Marwick) as an additional party defendant. The FDIC's amended complaint charged Peat Marwick with negligence and breach of contract in connection with Peat Marwick's audit of Penn Square's 1981 financial statements.
 
 
 3
 On April 22, 1985, First Penn Corporation (First Penn), Penn Square's holding company,[1] filed a motion to intervene in the FDIC suit. In its original and amended complaints, First Penn alleged both derivative and direct injury as a result of Peat Marwick's audit of Penn Square.[2] In its derivative claims First Penn sought as a shareholder of Penn Square to recover losses, allegedly incurred as a result of the Peat Marwick audit, from uncollectible loans that Penn Square made. In its nonderivative claims First Penn sought to recover losses incurred directly by selling to and buying from Penn Square participation interests in various loans.[3]
 
 
 4
 On July 30, 1985, the district court denied First Penn's motion to intervene. FDIC v. Jennings, 107 F.R.D. 50 (W.D.Okla.1985). The district court found that First Penn's interests in securing derivative damages were adequately represented by the FDIC, and that the issues involved in First Penn's nonderivative claims were "sufficiently different from those issues in the pending litigation as to warrant separate attention in a separate lawsuit," stating further that if those claims were consolidated, "the conglomeration would be unmanageable." Id. at 55. The district court subsequently denied First Penn's motions for reconsideration or a new trial, and First Penn filed a timely notice of appeal.
 
 
 5
 On July 18, 1986, while this appeal was pending but before oral argument, the FDIC settled its claims with Peat Marwick. The FDIC then filed a motion with this court to dismiss First Penn's appeal as moot. We reserved judgment on the motion for dismissal and requested supplemental briefing on the issue of mootness. At oral argument, First Penn abandoned its derivative claims against Peat Marwick. We now consider whether First Penn's appeal is mooted by the settlement between the FDIC and Peat Marwick. Then, because we hold that the appeal is not mooted, we consider whether the district court correctly denied intervention of right to First Penn.
 
 
 6
 * The doctrine of mootness requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216, n. 10, 39 L.Ed.2d 505 (1974). "It necessarily follows that when pending an appeal from the judgment of a lower court, ... an event occurs which renders it impossible ... to grant [plaintiff] any effectual relief whatever, the Court will not proceed to a formal judgment but will dismiss the appeal." Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895); see also Blinder, Robinson & Co. v. SEC, 748 F.2d 1415, 1418 (10th Cir.1984) ("relief sought must be capable of addressing the alleged harm"), cert. denied, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).
 
 
 7
 Both the FDIC and Peat Marwick claim that their settlement moots First Penn's claims. With some exceptions, a settlement involving all parties and all claims moots an action. Tosco Corp. v. Hodel, 804 F.2d 590, 592 (10th Cir.1986). But if a settlement moots some issues and not others, we are not deprived of jurisdiction to consider those remaining issues.[4] To allow a settlement between parties to moot an extant appeal concerning intervention of right might well provide incentives for settlement that would run contrary to the interests of justice.
 
 
 8
 First Penn has abandoned its derivative claims against Peat Marwick. But nothing about the settlement resolves First Penn's nonderivative claims against Peat Marwick regarding the loan participation interests, and the court's approval of the settlement does not foreclose an effective remedy. If First Penn was entitled to intervention of right, Peat Marwick's liability on the nonderivative claims is still subject to determination at trial. Accordingly, we have jurisdiction to consider whether First Penn is entitled to intervention of right under Fed.R.Civ.P. 24(a)(2).
 
 II
 
 9
 Because First Penn has abandoned its derivative claims, we do not consider whether the FDIC could adequately represent First Penn's interest with respect to those claims. Obviously, however, the FDIC would not adequately represent First Penn's interest as to the nonderivative claims. We therefore focus upon the other two requirements for intervention of right: whether First Penn "claims an interest relating to the property or transaction which is the subject of the action," and whether First Penn "is so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest." Fed.R.Civ.P. 24(a)(2).
 
 
 10
 The district court found that the nature of Peat Marwick's duties to First Penn and the foreseeability of First Penn's reliance are "legally and conceptually distinct from the interests and issues asserted" in the underlying litigation. 107 F.R.D. at 54. In deciding whether a movant for intervention of right has a sufficient interest in the subject of the suit we have not required that "the movant in intervention have a direct interest in the outcome of the lawsuit," Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission (NRDC), 578 F.2d 1341, 1344 (10th Cir.1978) (emphasis in original), but have required rather that "the 'interest' asserted in the subject of the litigation ... be a specific legal or equitable one." Allard v. Frizzell, 536 F.2d 1332, 1333 (10th Cir.1976). See also Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) (Rule 25(a)(2) "obviously meant ... a significantly protectable interest").
 
 
 11
 Because "courts have enjoyed little success in attempting to define precisely the type of interest necessary for intervention," Sanguine, Ltd. v. United States Department of Interior, 736 F.2d 1416, 1420 (10th Cir.1984), we look to the policy concerns underlying the interest requirement to determine whether an applicant's interest is sufficient. Id; accord Rosebud Coal Sales Co. v. Andrus, 644 F.2d 849, 850 (10th Cir.1981). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967).
 
 
 12
 First Penn's asserted interest stems from a duty that Peat Marwick allegedly owed to First Penn. First Penn claims that, had Peat Marwick given an accurate opinion regarding Penn Square's finances, First Penn would have refrained from buying and selling participation interests in certain loans. Thus, although both the FDIC and First Penn raise the issue whether Peat Marwick's audit of Penn Square was improperly and negligently performed, the district court correctly recognized that First Penn's intervention would interject new issues of Peat Marwick's "duty, forseeability and notices as to First Penn." 107 F.R.D. at 55 (emphasis added). In resolving those issues, what First Penn's directors and controlling shareholders knew or should have known about the practices of Penn Square would no doubt be litigated. These matters would be separate and distinct from the other issues in the underlying litigation between the FDIC and Peat Marwick.[5]
 
 
 13
 Turning to the question of impairment, we have recognized that the interest and impairment requirements of Rule 24(a)(2) are intertwined. NRDC, 578 F.2d at 1345 ("the question of impairment is not separate from the question of existence of an interest"). The magnitude or extent of an intervenor's interest will be in part a function of how much "the disposition of the action may as a practical matter impair or impede [the applicant's] ability to protect that interest...." Fed.R.Civ.P. 24(a)(2). See also 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1908 at 263 (1986) (interest and impairment requirements are closely related).
 
 
 14
 We note that, if First Penn is denied intervention, it would not be bound by res judicata or collateral estoppel from litigating the issue of Peat Marwick's negligence or its breach of any contract it had with First Penn. Madison Square Garden Boxing, Inc. v. Shavers, 562 F.2d 141, 142-43 (2d Cir.1977). But the impact of stare decisis, either in its technical sense of a decision on a legal point or in the broader sense of precedent in which a court has decided identical factual issues, may be sufficient in some instances to satisfy the impairment requirement. See NRDC, 578 F.2d at 1345.
 
 
 15
 Here the impact of stare decisis would be minimal because of significant differences between the FDIC's and First Penn's theories of Peat Marwick's liability.[6] See Jet Traders Investment Corp. v. Tekair, Ltd., 89 F.R.D. 560, 571 (D.Del.1981) (absence of controlling issue of law of first impression common to both actions results in minimal stare decisis effect). Moreover, accountant liability in the instant case is primarily governed by Oklahoma law, further limiting the precedential effect of a federal court's legal conclusions in subsequent proceedings. See Blake v. Pallan, 554 F.2d 947, 954 (9th Cir.1977); Jet Traders, 89 F.R.D. at 571.
 
 
 16
 In determining whether First Penn's interest is sufficient to justify intervention, we also ask whether intervention is "compatible with efficiency and due process." Nuesse, 385 F.2d at 700. One factor to consider is whether an intervenor will interject new issues at trial. In NRDC we allowed potential operators of uranium mills to intervene when "the considerations for requiring an environmental impact statement will be relatively the same in respect to the issuance of a uranium mining license in every instance." NRDC, 578 F.2d at 1345; see also Rosebud Coal, 644 F.2d at 850 n. 3 (NRDC "implicitly recognized that the would-be intervenors' 'interest' in the litigation was essentially coterminous with" the interest of a party already granted intervention). The confluence between the issues in the nonderivative claims of First Penn and those of the FDIC is not close, as it was in NRDC.
 
 
 17
 Moreover, at the time First Penn sought to intervene, the FDIC's action against Peat Marwick and certain former officers and directors of Penn Square was very large. More than twenty-five third-party claims had been filed, and elaborate "fast track" discovery had been scheduled and was approaching conclusion. The district court's docket sheet is more than fifty pages long, with more than 1000 entries. It is difficult to distinguish First Penn's interest in intervention from any other unsecured creditor that might have relied on Peat Marwick's audit. The district court, in denying intervention, stressed that point. 107 F.R.D. at 55 ("if all accountant liability suits arising from Penn Square were consolidated, the conglomeration would be unmanageable").
 
 
 18
 Given the differing issues in the two actions, the tenuous stare decisis or other precedential effect, and the burden on judicial efficiency relied upon by the district court, we hold that the district court did not err in denying intervention of right to First Penn under Rule 24(a)(2).[7]
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 First Penn owned all the common stock of Penn Square except for the qualifying shares owned by the members of Penn Square's board of directors
 
 
 [2]
 First Penn made no claims against any other defendants
 
 
 [3]
 First Penn also claimed damages resulting from a Peat Marwick audit of First Penn itself, which contained an inaccurate finding of real property ownership concerning an 8.5-acre tract in Oklahoma City. We agree with the district court's conclusion that this claim is "completely extrinsic to the subject matter of the existing litigation," Order July 30, 1985, at 2, R. I, Doc. No. 316, and summarily affirm the district court's denial of intervention with respect to this claim
 
 
 [4]
 In Tosco we held that when motions to intervene were filed after a settlement, we lacked jurisdiction to consider them. The settlement in Tosco resolved all pending issues; the fact that the applications for intervention were made after settlement meant that there was no existing case in which to intervene. In the case before us, the district court denied intervention, and a timely appeal to this court was taken before the settlement between the FDIC and Peat Marwick. Thus, Tosco does not require dismissal in the instant case
 
 
 [5]
 At the same time, we recognize that there is overlap. If the FDIC were to prove that Peat Marwick negligently failed to uncover employee wrongdoing, that evidence might benefit First Penn in proving its nonderivative claims. Indeed, at the present stage First Penn's principal interest in being allowed to intervene apparently is to take advantage of FDIC discovery about Peat Marwick's audit procedures
 
 
 [6]
 Although the subsequent settlement between the FDIC and Peat Marwick has removed the possibility of stare decisis, we review whether First Penn had a right to intervene at the time it filed its original motion
 
 
 [7]
 The district court opinion also found that permissive intervention under Fed.R.Civ.P. 24(b) was inappropriate here, although the court noted that First Penn did not ask for it. See 107 F.R.D. at 55. On appeal, First Penn makes a one-paragraph argument that permissive intervention would not unduly delay or prejudice the adjudication rights of the original parties. Brief of Appellant, Proposed Intervenor at 14. We do not consider that permissive intervention has been properly raised or presented, so we do not separately discuss that issue