UTE DISTRIBUTION CORPORATION, a Utah corporation, Plaintiff–Appellee,

v.

Gale NORTON, Secretary of the Interior of the United States, in her official capacity; Ute Indian Tribe, Defendants–Appellees,

Timpanogos Tribe, Snake Band of Shoshone Indians of Utah Territory, Movant–Appellant.

No. 01–4020.

United States Court of Appeals, Tenth Circuit.

July 25, 2002.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and MILLER,* District Judge.

### ORDER AND JUDGMENT**

MILLER, District Judge.

Movant–Appellant Timpanogos Tribe, Snake Band of Shoshone Indians of Utah Territory (Timpanogos Tribe) asserts that, because it claims aboriginal title to the water rights at issue in the underlying litigation, the district court erred in denying its motion to intervene of right pursuant to Fed.R.Civ.P. 24(a)(2).[1] We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

### Background

The central issue of the underlying litigation is the effect of the Ute Partition

and Termination Act (UPA), 25 U.S.C. §§ 677–677aa, on the current ownership or control of water rights for the lands of the Uintah and Ouray Indian Reservation in Utah. The UPA, passed in 1954, was part of the federal government's then-current policy of terminating its supervisory responsibilities for Indian tribes. *See Ute Distribution Corp. v. Ute Indian Tribe,* 149 F.3d 1260, 1261 (10th Cir.1998) (citing *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)).[2] We have described the effect of the UPA as follows:

The UPA focused on the Ute Indian Tribe of the Uintah and Ouray Reservation in Utah. The UPA did not terminate federal supervision over the entire Ute Indian Tribe, but instead divided the Ute Indian Tribe into two groups, "full-blood" members and "mixed-blood" members, and provided for the termination of federal supervision only as to the mixed-blood members. The stated purposes of the UPA were to partition and distribute the assets of the Ute Indian Tribe between the mixed-blood group and full-blood group; to end federal supervision over the trust and restricted property of the mixed-blood group; and to create a development program for the full-blood members to assist them in preparing for later termi-

---

\* Walker D. Miller, United States District Judge for the District of Colorado, sitting by designation.

\*\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. This appeal is the latest stage in the Timpanogos Tribe's attempts, through lawsuit or intervention, to enforce its claimed rights to the Uintah Valley portion of the Ute Reserva-

tion in Utah. *See, e.g., Timpanogos Tribe v. Conway,* 286 F.3d 1195 (10th Cir.2002) (interlocutory appeal; affirming denial of Eleventh Amendment immunity in case where Timpanogos Tribe seeks to enjoin Utah state officials from interfering with its alleged authority to regulate hunting and fishing in the Uintah Valley); *Ute Indian Tribe v. State of Utah,* Case No. 75–CV–408J (D.Utah) (motion to intervene denied; subsequent appeal dismissed for lack of prosecution).

2. This opinion is from a prior appeal in the underlying litigation; it is discussed more fully below.

nation of federal supervision over their property.

*Id.* (footnotes omitted).[3]

In 1956, pursuant to direction in the statute, the Secretary of the Interior published final membership rolls listing 1314 full-blood members and 490 mixed-blood members. *Id.* at 1262. Thereafter, the Ute Indian Tribe consisted exclusively of the full-blood members; the mixed-blood members retained no interest in the Tribe except as provided in the UPA. *Id.* Upon the publication of the final rolls, the representatives of the full-blood members and of the mixed-blood members divided the tribal assets susceptible to equitable partition and distributed them according to the relative number of persons on the final membership rolls. *Id.* Federal supervision over assets distributed to the mixed-blood members ceased.

Federal supervision continued, however, over all assets distributed to full-blood members and also over "the unadjudicated or unliquidated claims against the United States, all gas, oil, and mineral rights of every kind, and *all other assets not susceptible to equitable and practicable distribution.*" *Id.* (quoting 25 U.S.C. § 677i; emphasis added). These "indivisible assets" remained in trust for the benefit of the full-blood and mixed-blood groups and were to be "managed jointly by the Tribal Business Committee [the authorized representative of the full-blood members] and the authorized representatives of the mixed-blood group, subject to such supervision by the Secretary [of the Interior] as is otherwise required by law." *Id.* (quot-

ing § 677i; first alteration added, second in quoted material).

Plaintiff-appellee Ute Distribution Corporation (UDC) is the authorized representative of the mixed-blood Utes for purposes of managing the indivisible assets with the Tribal Business Committee.[4] *Id.*

In April 1995, the UDC filed a lawsuit against the Secretary of the Interior and the Ute Indian Tribe seeking a declaration that the indivisible property rights remaining in trust included the water rights pertaining to the Uintah Valley Reserve in northeastern Utah.

The Ute Indian Tribe moved to dismiss, asserting it was immune from suit. The district court denied the motion but allowed an immediate appeal; we reversed, holding the Tribe had not waived its sovereign immunity. *Id.* at 1269.

In 1996, the Secretary moved to dismiss. In response to argument in the reply brief that the UDC had failed to exhaust administrative remedies, the district court remanded the case to the Secretary for final action and decision on the issue of whether the water rights were indivisible and therefore subject to the joint management of the UDC and Tribal Business Committee under the UPA. The court retained jurisdiction pending the final decision by the Secretary.

On October 5,1998, the Secretary issued an opinion that the water rights had been distributed under the UPA. After the venue shifted back to the district court, the court determined that the case should proceed as a challenge to the Secretary's deci-

---

3. As we observed, the terms "mixed-blood" and "full-blood" "may be considered offensive" but are the designations employed by the UPA; we continued the usage to avoid confusion and will do the same here. *Id.* at 1261 n. 2.

4. The UDC is the successor to the Affiliated Ute Citizens of Utah, the original representative of the mixed-blood members.

sion under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.[5]

Following the *Ute Distribution Corp.* ruling in 1998, the Ute Tribe waived its sovereign immunity and re-entered the case by an unopposed motion to intervene. Its waiver of immunity was expressly limited to review of the Secretary's administrative decision.

Then, in January 2000, the Timpanogos Tribe filed its motion to intervene, contending it held aboriginal claim to the land (and thus the water rights) in the Uintah Valley, including the Uintah and Ouray Reservation. The district court heard argument on July 28, 2000, and orally denied the motion (although it observed that the Timpanogos Tribe's position, if successful, could render the litigation moot). It followed its oral ruling with a short, written order, entered December 27, 2000.

In its written ruling, the court found "that the Timpanogos Tribe is not a necessary and indispensable party in this action and that the claim it asserts, including its claim to being a historically recognized Indian tribe, are outside the scope of this litigation."[6] December 27, 2000 order, at 2. In the earlier oral ruling, the court found the motion to intervene was not timely because the Timpanogos Tribe had known of its alleged interest in the reservation for years and had known of the Ute Tribe claims since at least the passage of the Ute Partition Act in 1954; also, the Tribe did not seek to intervene in the lawsuit until nearly five years after it began.

On January 22, 2000, Red Rock Corporation moved to intervene.[7] This motion was granted following the hearing in July 2000; the intervention was limited to the issue of whether Ute Indian water rights were susceptible to equitable and practicable distribution and therefore subject to joint management by the Tribal Business Committee and the UDC pursuant to the UPA. March 13, 2001 order, at 2. Red Rock is not a party to this appeal.

### Analysis

Under Rule 24(a)(2), intervention of right is permitted if: "(1) the application is 'timely'; (2) 'the applicant claims an interest relating to the property or transaction which is the subject of the action'; (3) the applicant's interest 'may as a practical matter' be 'impair[ed] or impede[d]'; and (4) 'the applicant's interest is [not] adequately represented by existing parties.'" *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior,* 100 F.3d 837, 840 (10th Cir.1996) (quoting Rule 24(a)(2)).[8]

---

5. According to the UDC's response brief, the Secretary failed to provide it with access to relevant documents prior to issuing the administrative opinion. The district court issued a March 24, 2001 order stating that it would not review the Secretary's opinion until the UDC and the Ute Indian Tribe had the opportunity to submit supplemental authority and/or arguments to the Secretary for further review. There had been no final action by the Secretary as of the date of oral argument.

6. The term "indispensable" comes from Fed. R.Civ.P. 19, governing joinder. The district court's use of this term is discussed below.

7. Red Rock, which is comprised of mixed bloods who maintained control of certain lands after termination, also claims an interest in the water rights in the Uintah Valley.

8. Fed.R.Civ.P. 24(a)(2), governing intervention of right, states:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect

While we review the denial of intervention of right *de novo*, we will disturb the district court's determination that the motion is timely only upon an abuse of discretion. *Id.* Under the abuse of discretion standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir.1997). An order denying intervention of right is "final and subject to immediate review if it prevents the applicant from becoming a party to an action." *Coalition of Arizona/New Mexico Counties for Stable Economic Growth*, 100 F.3d at 839.

In its motion to intervene and its opening brief on appeal, the Timpanogos Tribe relies on events and treaties prior to the enactment of the UPA to support its claim to paramount title to the water rights at issue. The import of the Timpanogos Tribe's argument is that the reservation lands in Utah were created for the Shoshone, not the Utes.[9] The Timpanogos Tribe traces the territories of the Shoshone and the Utes from 1776, through the 1864 ratification of an executive order issued by President Lincoln creating the reservation in Utah Territory, to the Indian Reorganization Act of 1934. The Timpanogos Tribe contends there were no

Utes in Utah as of 1861, the priority date of the water rights at issue, and that no later events or laws conferred upon the Ute Tribe any assets of the Uintah Valley reservation.

### 1. Timeliness[10]

Timeliness of a motion for intervention is determined in light of all circumstances, "including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Sanguine, Ltd. v. United States Dep't of the Interior*, 736 F.2d 1416, 1418 (10th Cir.1984).

The Timpanogos Tribe asserts that its motion for intervention was timely; it focuses on the age of the litigation when the motion was filed, arguing it is "significant" that the Red Rock Corporation was permitted to intervene even though its motion was filed after the Tribe's. The circumstances of the litigation when intervention is sought is only one factor the district court could consider, however. *Id.* Moreover, given the differences in the claims of the Timpanogos Tribe and of the Red Rock Corporation,[11] a mere comparison of the filing dates cannot establish an abuse of discretion.

Appellees assert there was no abuse of discretion here. They construe the Tim-

---

that interest, unless the applicant's interest is adequately represented by existing parties.

9. The Timpanogos Tribe alleges that its members are Shoshone.

10. As a preliminary matter, the UDC argues in its response brief that the Timpanogos Tribe has raised arguments on appeal that were not presented to the district court. As a general rule, we do not consider such arguments. *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir.), *cert. denied*, 516 U.S. 810, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995).

The UDC does not specify which are the new arguments, other than stating that the Timpanogos Tribe did not address the elements of Rule 24(a) before the district court. Although the record does not reflect any clear application of the elements of Rule 24(a)(2), we will address the merits of the Timpanogos Tribe's arguments on appeal.

11. The Secretary contends that, although Red Rock's motion was filed later than that of the Timpanogos Tribe, its claims raise no new issues in the lawsuit. Further, Red Rock's intervention was specifically limited to the issues framed by the district court.

panogos Tribe's claim to title to the Ute Reservation in Utah as arising, at the latest, in 1954 when Congress passed the UPA based on the premise that the Ute Tribe owned the reservation.[12] They point out that the Timpanogos Tribe moved to intervene approximately five years into the lawsuit and claim that its intervention at this stage of the lawsuit would prejudice the existing parties by inserting new, substantial issues into the case. Appellees contend that no prejudice will result to the Timpanogos Tribe because resolution of the current litigation will not preclude assertion of its claims in another forum.[13]

In reply, the Timpanogos Tribe contends the motion for intervention was timely because the district court had not started its administrative review at the time the motion was filed. It does not address any failure to assert an interest in the land and/or water rights subsequent to the passage of the UPA. Further, although it concedes that the matter at issue before the district court is whether the water rights in question were susceptible to partition under the UPA, it does not explain how its claim to aboriginal interest in the water rights is necessary to this determination or how resolution would impair that interest.

In its oral ruling, the district court found the petition untimely, both in terms of the Timpanogos Tribe's failure to assert its interest in the land and water rights upon passage of the UPA and because the lawsuit had been pending for almost five years

before the motion was filed. July 28, 2000 transcript, at 60–61.

The Timpanogos Tribe has not demonstrated any abuse of discretion in the finding that it acted in an untimely manner in seeking to intervene in this action.[14]

## 2. *Interest in Property at Issue*

An applicant for intervention of right must have a "specific legal or equitable" claim to an interest asserted in the subject of the litigation. *FDIC v. Jennings,* 816 F.2d 1488, 1491–92 (10th Cir.1987) (affirming denial of intervention where, although movant had general interest in subject of lawsuit, intervention would interject new issues separate and distinct from those being litigated). We have described the policy behind the interest test as the practical need to involve in a lawsuit "as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 1491 (quotations omitted).

On this issue, the Timpanogos Tribe simply claims there is no dispute that it holds an interest in the water rights. The cases cited in support of this statement are not on point, because in each the interveners indisputably had an interest in the subject property. *See, e.g., Oneida Indian Nation of Wisconsin v. New York,* 732 F.2d 261, 265 (2nd Cir.1984) (Indian nations held entitled to intervene in dispute over title to Indian lands where there was no dispute that interveners had an interest in the lands at issue; court found significant likelihood that interpretation of laws

12. Specifically, the Ute Tribe argues the Timpanogos Tribe should have raised its claims after the UPA was passed in 1954 and that the statute of limitations for the Tribe's claims of an interest in the reservation ran as of 1967, six years after the Secretary issued the Ute Termination Proclamation, citing 28 U.S.C. § 2501 (6–year statute of limitations for petitions in the United State Court of Federal Claims).

13. The Timpanogos Tribe has not demonstrated how application of the doctrines of *res judicata,* collateral estoppel, or even *stare decisis* arising from a decision in this case would prevent the Tribe from asserting its claim in another action.

14. Although our agreement that the motion for intervention was not timely is dispositive of the Timpanogos Tribe's appeal, we will address its remaining arguments.

and treaties necessary to resolution of underlying lawsuit would implicate principles of *stare decisis* that would have adverse impact on intervener's claims); *State of New Mexico v. Aamodt*, 537 F.2d 1102, 1106–07 (10th Cir.1976) (Indians with prior interest in water rights allowed to intervene as of right in lawsuit concerning whether water uses by Pueblo Indians were controlled by state water law; government conceded conflict of interest necessitating intervention through private counsel), *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977).

Appellees contend the Timpanogos Tribe has no legally protectable interest in the litigation, now framed as an action under the Administrative Procedure Act to test the Secretary's decision that the UPA authorized the division and distribution of the Ute Tribe's water rights.[15] Under the APA, the issue before the district court is whether the Secretary's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The district court is confined to the administrative record in resolving this issue. *IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals*, 206 F.3d 1003, 1009 n. 12 (10th Cir.2000).

The Secretary likens the Timpanogos Tribe's arguments to an attempt to transform the district court case from an APA challenge to the 1998 interpretation of the UPA into a quiet title action for the Ute reservation. Rule 24(a) "is not intended to allow for the creation of whole new suits by intervenors." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2nd Cir.1990) ("Intervenors must take the pleadings in a case as they find them").

In addition, the Ute Tribe argues that its waiver of sovereign immunity in the district court (limited to the extent of review of the administrative decision) must be narrowly construed. *United Tribe of Shawnee Indians*, 253 F.3d at 547 (waiver must be construed strictly in favor of sovereign). It contends that the new issues raised by the Timpanogos Tribe's motion for intervention are beyond the scope of its waiver of immunity, as well as beyond the district court's limited scope of review under the APA.

The Timpanogos Tribe interprets its claims as falling within the scope of the Ute Tribe's waiver. It also asserts that

---

**15.** Appellees argue that the Timpanogos Tribe's status as a non-federally recognized Indian tribe negates any standing to challenge agency action under the APA. *Western Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1056–57 (10th Cir.1993) (tribe's business council not entitled to APA review of Bureau of Indian Affairs refusal to review contract between council and law firm where tribe did not appear on list of federally recognized Indians; statute requiring review applied only to agreements made "with any tribe of Indians"). *But see United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 547 (10th Cir.2001) (25 U.S.C. § 479a provides Indian tribes may be recognized by Acts of Congress, by administrative procedures set forth in the regulations, "or by a decision of a United States court").

Similarly, the Ute Indian Tribe focuses on its contention that there is no evidence that the Timpanogos Tribe before the court is the present-day embodiment of the Indians for whom the Uintah Reservations was established. *See United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 548 (10th Cir.2001) (rejecting "bare assertion" that Indians were present-day embodiment of the Shawnee Tribe; prior explicit recognition of the Tribe in an 1854 Treaty and by the United States Supreme Court not determinative where there was no evidence Indians had maintained identity with Shawnee tribe or had continued to exercise tribe's sovereign authority).

We do not reach these issues because the Timpanogos Tribe's failure to meet the requirements of Rule 24(a)(2) is dispositive of the appeal.

our prior opinion in *Ute Distribution Corporation*, finding sovereign immunity, did not address whether that immunity was abrogated by an 1880 Act of Congress.[16] We need not resolve this latter issue here.

▄ We agree with the appellees that the Timpanogos Tribe's claim to aboriginal title to the land and water rights does not implicate, and is not affected by, the question of whether the water rights were divided and distributed to the full-blood and mixed-blood members of the Ute Tribe pursuant to the UPA in the 1960's. Because it seeks to introduce issues collateral to the administrative record, the Timpanogos Tribe does not have a "direct, substantial, and legally protectable" interest in the underlying case. *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 90, 91 (10th Cir.1993) ("The opportunity to offer extraneous evidence beyond the administrative record, and thus beyond the scope of the narrow issue before the district court, is not an interest protectable in the underlying action").

3. *Effect of Action on Interest (Impairment)*

Litigation impairs a third party's interests when the resolution of the legal questions in the case effectively foreclose the rights of the proposed intervenor in later proceedings, whether through *res judicata*, collateral estoppel, or *stare decisis*. *Jennings*, 816 F.2d at 1492.

The Timpanogos Tribe contends intervention is proper where a third party has an interest that is adverse to both plaintiff and defendant. *Alvarado v. J.C. Penney*, 997 F.2d 803, 805 (10th Cir.1993).[17] It asserts that its interest in the water rights "would be severely·prejudiced" absent intervention.

▄ The United States maintains that the lawsuit will not impair any interest claimed by the Timpanogos Tribe. The only question presented by the UDC suit is whether the Secretary's administrative decision was arbitrary and capricious. Any ruling by the district court would have no impact on the issues raised by the Timpanogos Tribe because the APA issue does not affect the validity of any statutes or treaties relied on by the Tribe, does not decide the question of aboriginal claim to land/water rights; and does not decide whether Congress abrogated that title in the 1954 UPA. Therefore, there would be no preclusive effect on the Timpanogos Tribe's claims and interests.[18]

We conclude that resolution of the district court case in the Timpanogos Tribe's absence will not impair or impede protection or assertion of its interest.[19]

4. *Adequate Representation*

The Timpanogos Tribe asserts there is no dispute that it meets the fourth criteri-

---

16. The Timpanogos Tribe cites to "the Act of June 15, 1880 (21 Stat. 199)," in which certain bands of Ute Indians surrendered claims to lands within the continental United States.

17. In *Alvarado v. J.C. Penney Co., Inc.*, 997 F.2d 803, 805 (10th Cir.1993), however, the intervention was not opposed. Appellees distinguish another case cited by the Timpanogos Tribe, *South Dakota Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 563 (D.S.D. 1999), on grounds that the issue of prejudice to existing parties is relevant to the timeliness

of a motion to intervene, not the impairment issue.

18. It is not relevant that the Timpanogos Tribe's claims could, if successful, render the underlying lawsuit moot. The issue is whether the underlying lawsuit would impair the intervener's interest, not whether that interest would impair the lawsuit.

19. We take no position on the merits or the timeliness of a lawsuit brought to adjudicate the Timpanogos Tribe's claims to the Uintah lands.

on because the parties presume the Ute Tribe and, perhaps, the UDC hold title to the water rights at issue and so would not protect the claims of the Timpanogos Tribe to those rights.

We will assume this factor weighs in its favor.

### 5. *Rule 19 Issue*

The Timpanogos Tribe latches onto language in the district court's written ruling (taken from the motion for intervention itself) in which the court found the Tribe was not a "necessary and indispensable" party to the underlying litigation. *See* Fed.R.Civ.P. 19.[20] First, the Timpanogos Tribe suggests this analysis was proper, citing *Atlantis Dev. Corp. v. United States,* 379 F.2d 818, 825 (5th Cir.1967), for the proposition that "whether an intervention as a matter of right exists often turns on the unstated question of whether joinder of the intervenor was called for under new Rule 19." It asserts it is a necessary and indispensable party and should be permitted to intervene or the underlying matter should be dismissed pursuant to Rule 19. The Timpanogos Tribe later argues, however, that the district court's application of Rule 19 criteria in the Rule 24 context "warrants reversal in its own right." Opening Brief, at 14.

The United States reiterates that the Timpanogos Tribe does not have an interest that will be impaired by the lawsuit.

It points out that the Tribe does not argue its absence would leave any party subject to the risk of inconsistent obligations or that, in its absence, the court cannot grant complete relief to the parties. *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993, 997 (10th Cir.2001). Thus, adapting a Rule 19 analysis, intervention is still not warranted. The UDC concurs in this position.

Even if a Rule 19 analysis may be applied to a motion for intervention of right, the Timpanogos Tribe must still demonstrate that it meets the four elements of Rule 24(a)(2). It has not done this, and the district court's denial of intervention must be upheld.

Accordingly, we AFFIRM the order of the United States District Court for the District of Utah denying the Timpanogos Tribe's motion to intervene.

---

20. Rule 19 provides, in relevant part:

(a) Persons To Be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable....