# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 12-2984, 12-3894

_____

United States of America, ex rel Fredrick Newell

*Plaintiff - Appellant*

v.

City of St. Paul, Minnesota

*Defendant - Appellee*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 13, 2013
Filed: August 28, 2013

_____

Before LOKEN, BRIGHT, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

Fredrick Newell brought this action under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), on behalf of the United States against the City of St. Paul. Newell alleged that, from 2003 through 2009, the City obtained grants from the U.S. Department of Housing and Urban Development ("HUD") by falsely certifying compliance with Section 3 of the Housing and Urban Development Act of 1968 and

its applicable regulations. See 12 U.S.C. § 1701u; 24 C.F.R. § 135 (collectively "Section 3"). The government declined to intervene in Newell's "*qui tam*"[1] action. The district court[2] granted the City's motion to dismiss, concluding the court lacked subject matter jurisdiction because Newell was not an original source of fraud allegations that were based on publicly disclosed information. The court later denied Newell's motion for relief from the judgment under Rule 60(b). Newell appealed both orders. We consolidated the appeals and now affirm.

## I. Public Disclosure Bar

The *qui tam* provisions of the FCA, enacted in 1863 to combat fraud by Civil War defense contractors, authorize private citizens (called relators) to sue on behalf of the government and, as a bounty, share in any recovery. The public disclosure bar was part of the 1986 FCA amendments "intended to encourage private enforcement suits by legitimate whistleblowers while barring suits by opportunistic *qui tam* plaintiffs who base their claims on matters that have been publicly disclosed by others." Hays v. Hoffman, 325 F.3d 982, 987 (8th Cir.), cert. denied, 540 U.S. 877 (2003). The statutory bar in effect in 2009, when Newell filed this action, provided:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

[1]See Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 769 n.1 (2000).

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

31 U.S.C. § 3730(e)(4)(A). When this bar applies, the district court lacks subject matter jurisdiction to afford the relator FCA relief. Rockwell Int'l Corp. v. United States, 549 U.S. 457, 467-70 (2007).[3]

Newell is the owner of three construction companies that have unsuccessfully attempted to secure work on HUD-funded projects in the City. In April 2008, he filed an administrative complaint with HUD alleging that the City was violating Section 3 and falsely certifying compliance to obtain HUD grants. In May 2009, with that complaint pending, Newell brought this *qui tam* action under the FCA. The complaint was sealed while the government investigated the allegations and decided whether to intervene. See 31 U.S.C. § 3730(b)(2). In the meantime, HUD conducted a Section 3 compliance audit and determined that the City had violated Section 3.

In February 2010, HUD and the City entered into a Voluntary Compliance Agreement that "fully and finally" resolved Newell's administrative complaint but not the City's potential FCA liability. In February 2012, the government declined to intervene in the *qui tam* action. Newell then filed an amended complaint, and the City moved to dismiss under Rule 12(b)(1), contending that the public disclosure bar stripped the court of jurisdiction to consider Newell's fraud allegations.[4] The district

---

[3]Section 3730(e)(4)(A) was amended in 2010. It now provides that, if the public disclosure bar applies: "The court shall dismiss an action or claim under this section, unless opposed by the Government." The parties agree that this case is governed by the statute in effect when the action was filed. See Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson, 130 S. Ct. 1396, 1400 n.1 (2010).

[4]The City also sought dismissal under Rule 12(b)(6), contending that its alleged non-compliance with Section 3 does not give rise to FCA liability as a matter of law. The district court did not consider this issue; because we agree the court lacked subject matter jurisdiction, neither do we. See generally United States ex rel. Vigil v. Nelnet, Inc., 639 F.3d 791, 795-96 (8th Cir. 2011).

court granted the City's motion to dismiss, concluding that Newell's FCA claims were based upon "allegations or transactions" that were publicly disclosed and he does not qualify as an "original source of the information." Newell appeals both rulings. As the party invoking federal jurisdiction, he has the burden of establishing the court's FCA jurisdiction. See Hays, 325 F.3d at 987.

A. Public Disclosure. Congress enacted Section 3 to "ensure that the employment and other economic opportunities generated by Federal financial assistance for housing and community development programs shall, to the greatest extent feasible, be directed toward low- and very low-income persons, particularly those who are recipients of government assistance for housing." 12 U.S.C. § 1701u(b). To that end, HUD regulations require that Section 3 grant recipients provide, "to the greatest extent feasible," training and employment opportunities for low-income persons and for businesses employing such persons in connection with projects funded by HUD community development grants. See 24 C.F.R. §§ 135.1 - 135.92. Grant applicants must certify that they will comply with Section 3 requirements, see 24 C.F.R. § 135.9(a), and grantees must submit annual reports to HUD documenting compliance, see 24 C.F.R. § 135.90.

Newell's FCA fraud claim is straightforward: From 2003 through 2009, he alleges, the City received $62 million in HUD grants by certifying compliance with Section 3 requirements; during those years, the City knowingly failed to comply with those requirements; therefore, the City's certifications were knowingly false, entitling the government to treble damages and Newell to his relator's share. The jurisdictional bar to an FCA claim arises "only when the essential elements comprising the fraudulent transaction have been publicly disclosed so as to raise a reasonable inference of fraud." United States ex rel. Hixson v. Health Mgmt. Sys., Inc., 613 F.3d 1186, 1188 (8th Cir. 2010) (quotations omitted). Stated differently, to raise the bar, public disclosures must reveal "both the true state of facts and that the defendant represented the facts to be something other than what they were." Minn.

Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp., 276 F.3d 1032, 1044 (8th Cir.), cert. denied, 537 U.S. 944 (2002). Thus, the issue is whether *both* the true state of facts (the City's non-compliance) and the misrepresentation of facts (the City certifying compliance to HUD) were publicly disclosed within the meaning of § 3730(e)(4) before Newell brought his *qui tam* action in May 2009.

In 2005, Newell obtained an internal memorandum by Edward McDonald, a former City employee, that included detailed allegations of the City's noncompliance with Section 3 requirements. Newell publicized the McDonald memorandum at a City Council hearing in August 2005, reading the relevant Section 3 portions into the record. Newell also joined a civil rights lawsuit against the City in 2006 during which the entire McDonald memorandum was publicly filed. See Thomas v. City of Saint Paul, D. Minn. Civ. No. 06-2860, Dkt. No. 33-1. In June 2006, Newell sued the City in federal court, alleging numerous violations of Section 3 and seeking compensatory and injunctive relief. He obtained documents relating to the City's Section 3 compliance from HUD by filing Freedom of Information Act ("FOIA") requests and submitted the FOIA requests as evidence of the City's noncompliance to support his motion for a preliminary injunction in that action. In February 2007, the district court denied Newell's motion and dismissed the suit for lack of standing because he had not suffered injury traceable to the City. See Nails Const. Co. v. City of Saint Paul, Civ. No. 06-2657, 2007 WL 423187, at *2-3 (D. Minn. Feb. 6, 2007). Newell's allegations of chronic Section 3 noncompliance in the Nails complaint were nearly identical to those in his 2009 *qui tam* complaint. We agree with the district court that Newell's allegations of Section 3 non-compliance were publicly disclosed in the McDonald memorandum and the Nails litigation (among other public sources of that information).

Newell's allegation that the City's falsely certified Section 3 compliance in applying for and obtaining HUD grants was publicly disclosed when he obtained the City's Section 3 compliance documents from HUD under FOIA. See Schindler

Elevator Corp. v. United States ex rel. Kirk, 131 S. Ct. 1885, 1896 (2011) (agency responses to FOIA requests by a relator are "reports within the meaning of the public disclosure bar"). In addition, while publicizing the McDonald memorandum at a public City Council hearing in 2005, Newell asserted that the Mayor of St. Paul certified "that he would fulfill the requirements of the Section 3, yet Section 3 is ignored." Accordingly, both the true state of facts and the alleged misrepresentation of facts were publicly disclosed before Newell filed his *qui tam* action.

On appeal, Newell virtually concedes these public disclosures but argues that his fraud allegations were not "based upon" these sources because he was aware of the City's noncompliance *before* the McDonald memorandum was released, the FOIA responses "only furthered [his] existing independent knowledge of the City's violations," and he did not assert a claim of fraud in the Nails litigation. These arguments are without merit because they conflate distinct § 3730(e)(4) issues. A *qui tam* action is "based upon" public disclosures when the allegations in the action and those in the public disclosures are substantially similar, regardless of whether the relator may have had independent knowledge of the fraud. See Nurse Anesthetists, 276 F.3d at 1045-47; Glaser v. Wound Care Consultants, Inc. 570 F.3d 907, 915 (7th Cir. 2009) (joining the "majority view" of eight other circuits). Whether Newell obtained the publicly disclosed information independent of the McDonald memorandum and the FOIA responses goes to whether he was an original source, not to whether his *qui tam* claims were based upon that information.

B. Original Source. Newell argues the district court erred in concluding he was not an original source of the information on which his fraud allegations were based. An "original source" is "an individual who has direct and independent knowledge of the information." § 3730(e)(4)(B); see Hays, 325 F.3d at 990. That means direct and independent knowledge of the information on which *his fraud allegations* are based, not the information on which *the publicly-disclosed allegations* were based. Rockwell, 549 U.S. at 470-71. "Independent knowledge" is "knowledge

not derived from the public disclosure." Nurse Anesthetists, 276 F.3d at 1048. "Direct knowledge" is first-hand knowledge; "a person who obtains secondhand information from an individual who has direct knowledge of the alleged fraud does not himself possess direct knowledge and therefore is not an original source under the [FCA]." United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995); see In re Natural Gas Royalties, 562 F.3d 1032, 1045 (10th Cir.), cert. denied, 558 U.S. 880 (2009).

We agree with the district court that Newell failed to establish he had direct and independent knowledge of the information underlying his fraud allegations. Newell, a private citizen, obviously had no direct or independent knowledge of the City's alleged "misrepresentation of facts" -- that is, the false certifications of Section 3 compliance and failures to file required Section 3 annual reports. Those allegations were based on publicly-disclosed information, most likely HUD's FOIA responses.

A relator does not have to have personal knowledge of all elements of a false claim cause of action. "If the relator has direct knowledge of the true state of the facts, [he] can be an original source even though [his] knowledge of the misrepresentation is not first-hand." Nurse Anesthetists, 276 F.3d at 1050. But Newell's fraud allegations are nonetheless barred because he failed to establish direct and independent knowledge of the "true state of the facts" -- that is, the City's alleged chronic noncompliance with Section 3 requirements. Newell's declaration in opposition to the City's motion to dismiss demonstrated that his knowledge of the City's noncompliance, in particular its failure to collect and maintain Section 3 data, was derived almost entirely from current and former City employees. Tyrone Terrill and Tom Sanchez informed Newell that the City did not collect or maintain Section 3 compliance data. The McDonald memorandum lamented the City's lack of Section 3 procedures and its failure to place "recruited employees" on projects funded by Section 3-covered grants.

-7-

Newell points to his attendance at a June 2000 meeting concerning the City's HUD-funded lead-abatement projects as evidence that he witnessed the alleged noncompliance first-hand. At that meeting, City representatives informed him that the City "would not be adding additional contractors to their existing remodeling contractor list" and that "the City would use HUD funds that it received to train the City's existing remodeling contractors." But the City's failure to add Newell to its list of contractors in June 2000 does not establish even a single instance of noncompliance with Section 3, much less the sort of *chronic* noncompliance that would permit an inference that the City's annual certifications that it would comply were knowingly or recklessly false. Accord Vigil, 639 F.3d at 795. Only with the information Newell later learned from City employees and from other publicly disclosed sources could he credibly allege an actionable FCA violation. Newell's previous experience in attempting to secure Section 3-covered work and his interest in the subject matter simply do not qualify him as an original source for purposes of the public disclosure bar. See In re Natural Gas Royalties, 562 F.3d at 1045 ("The fact that a relator has background information or unique expertise allowing him to understand the significance of publicly disclosed allegations and transactions is also insufficient."); accord Hays, 325 F.3d at 990 (rejecting a catalyst theory).

For the above stated reasons, we affirm the district court's decision that it lacked subject matter jurisdiction under 31 U.S.C. § 3730(e)(4).

## II. The Rule 60(b) Issue

More than two months after the district court issued its Memorandum Opinion and Order dismissing the *qui tam* action for lack of jurisdiction, while that ruling was pending on appeal, Newell filed a motion for Rule 60(b) relief from the final judgment, alleging that the government had declined to intervene because of a secret "global settlement" between the Department of Justice and the City in which his *qui tam* action was used as a bargaining chip to induce the City not to take an action in

an unrelated Fair Housing Act litigation that could jeopardize the government's recovery of $750 million in various unrelated lawsuits.[5]  The district court denied the motion without an evidentiary hearing.  On appeal, abandoning other theories argued to the district court, Newell argues the district court abused its discretion in denying Rule 60(b) relief because the secret settlement, unlike a discretionary decision not to intervene in a *qui tam* action, enabled the government to obtain an "alternate remedy" that entitles him to a share of the settlement proceeds under § 3730(c)(5) of the FCA. See Jones v. Swanson, 512 F.3d 1045, 1049 (8th Cir. 2008) (standard of review).  At a minimum, he urges us to remand for discovery concerning the nature and extent of the agreement between the government and the City.

We reject this novel contention because none of Newell's allegations concerning a secret agreement between the government and the City had anything to do with the basis for the district court's entry of its adverse final judgment -- that it lacked subject matter jurisdiction over Newell's *qui tam* action because of the public disclosure bar.  After the government declined to intervene, Newell continued to litigate his *qui tam* claims.  Had he prevailed, he would have been awarded a larger percentage of the recovery than if the government had intervened.  See 31 U.S.C. § 3730(d)(2); Roberts v. Accenture, LLP, 707 F.3d 1011, 1015-16 (8th Cir. 2013). A district court does not abuse its discretion in denying a Rule 60(b) motion when the moving party fails to show that the alleged misrepresentations or newly discovered evidence "would probably produce a different result." McCormack v. Citibank, N.A., 100 F.3d 532, 542 (8th Cir. 1996) (quotations omitted).

We also reject Newell's contention that Rule 60(b) relief is warranted because the government obtained an "alternate remedy."  Section 3730(c)(5) provides:

---

[5]The motion did not specify the subpart(s) of Rule 60(b) on which Newell relied.  On appeal, he cites Rule 60(b)(2), (3), and (6), which grant discretion to relieve a party from a final judgment on grounds of newly discovered evidence, fraud or misconduct by an opposing party, or "any other reason that justifies relief."

[T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

In this case, the government did not "elect to pursue" the FCA claims Newell asserted against the City in "another proceeding." Newell's Rule 60(b) contention is that the government used the City's potential treble damage exposure in his *qui tam* action as leverage to persuade the City to take action that enabled the government to recover far more in unrelated, non-FCA cases. As defined in § 3730(c)(5), the term "alternate remedy" does not include the government's settlement of unrelated claims against unrelated parties in unrelated lawsuits. Accord United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 192 (4th Cir. 1999) ("To the extent these [settled] claims are unrelated to [relators'] earlier action, they have no rights because they are not bona fide relators with respect to those claims.").

Moreover, *even if* the government pursued and obtained an "alternate remedy," Newell would not be entitled to a share of that remedy because his FCA claims were subject to dismissal under the public disclosure bar. As the plain language of § 3730(c)(5) makes clear, if the government pursues an alternate remedy in another proceeding, the *qui tam* relator has the "same rights" in that proceeding as he would have if the action had continued under the FCA. Here, as Newell's FCA claim is jurisdictionally barred, he "may not receive any share of the proceeds attributable to that claim." United States ex rel. Merena v. SmithKline Beecham Corp., 205 F.3d 97, 106 (3d Cir. 2000); see United States ex rel. Adrian v. Regents of Univ. of Cal., 337 Fed. App'x 379, 381 (5th Cir. 2009) (affirming the denial of Rule 60(b) relief for this reason). Newell argues that Merena -- a case in which the government intervened and settled the FCA claim -- is distinguishable because, here, the government obtained the alleged alternate remedy *before* the district court dismissed his *qui tam* claims under

-10-

the public disclosure bar. We conclude it is immaterial that the government obtained an alternate remedy and declined to intervene before the City raised the public disclosure bar. Newell assumes that if the government recovers anything, whether after intervention or by alternate remedy, the relator gets a share. That is not necessarily true, as in some cases the government settles and then sues the relator to block his recovery. Cf. Rockwell, 549 U.S. at 478; United States ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 516-19 (6th Cir. 2009). Newell cites no case in which a relator subject to the public disclosure bar was nonetheless entitled to a share of the government's "alternate remedy." United States ex rel. Bledsoe v. Community Health Sys., Inc., 342 F.3d 634, 647-51 (6th Cir. 2003), on which Newell principally relies, did not consider this issue.

For these reasons, we conclude the district court did not abuse its discretion in denying Newell's Rule 60(b) motion. We affirm the judgment of the district court and its Memorandum Opinion and Order dated November 26, 2012. We deny Newell's motion to take judicial notice.

_____