**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 14-17434 |
| JOHN C. PRATHER, *Applicant-in-Intervention-Appellant*, | D.C. No. 3:14-cv-00962-CRB |
| v. | OPINION |
| SPRINT COMMUNICATIONS, INC., FKA Sprint Nextel Corporation; SPRINT PCS, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted September 14, 2016
San Francisco, California

Filed April 28, 2017

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and William K. Sessions III,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable William K. Sessions III, United States District Judge
for the District of Vermont, sitting by designation.

# SUMMARY[**]

---

## False Claims Act / Intervention

The panel affirmed the district court's order denying John Prather's Fed. R. Civ. P. 24(a)(2) motion to intervene as of right in a False Claims Act suit brought by the United States against Sprint Communications, Inc.

In 2009, Prather filed a *qui tam* False Claims Act action ("*Prather I*") against Sprint and other telecommunications companies; the government elected not to intervene. The district court concluded that Prather could not show he was an "original source" of publicly disclosed information regarding the telecommunications companies' allegedly fraudulent activities, and dismissed Prather's *qui tam* suit for lack of jurisdiction. While Prather's appeal in *Prather I* was pending, the government filed its own False Claims Act suit against Sprint, and Prather moved to intervene.

The panel held that Prather's appeal was not moot. Specifically, the panel held that the parties' settlement and dismissal of a case after the denial of a motion to intervene did not as a rule moot a putative-intervenor's appeal. The panel concluded that reversing the district court's order could afford Prather a possible avenue to some remedy, and therefore, the case was not moot.

On the merits, the panel held that Prather did not have a significantly protectable interest in the government's False

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Claims Act action against Sprint. The panel further held that Prather's prior filing of a related, but jurisdictionally barred, *qui tam* action did not entitle him to any award under the False Claims Act. The panel concluded that Prather was not entitled to intervene as of right in the government's False Claims Act action against Sprint.

**COUNSEL**

John G. Balestriere (argued) and Jillian L. McNeil, Belstriere Fariello, New York, New York, for Applicant-in-Intervention-Appellant.

Kimberly Friday (argued) and Steven J. Saltiel, Assistant United States Attorneys; Alex G. Tse, Chief, Civil Division; United States Attorney's Office, San Francisco, California, for Plaintiff-Appellee.

Edward C. Barnidge (argued) and Benjamin M. Stoll, Williams & Connolly LLP, Washington, D.C.; David F. Taylor, Perkins Coie LLP, Seattle, Washington; for Defendants-Appellees.

## OPINION

BERZON, Circuit Judge:

John C. Prather sought to intervene as of right in a False Claims Act ("FCA") suit brought by the United States ("Government") against Sprint Communications, Inc. ("Sprint"). Whether Prather had the significantly protectable interest required to support his motion to intervene depends on whether he would have been entitled to any recovery if the Government had intervened in his 2009 *qui tam* FCA action. *See* Fed. R. Civ. P. 24(a)(2); *Prather v. AT&T*, 847 F.3d 1097 (9th Cir. 2017) ("*Prather I*"). We conclude that Government intervention in Prather's *qui tam* action could not have secured him any right to a share of the proceeds from that action and therefore affirm the district court's order.

## BACKGROUND

In 2009, Prather filed a *qui tam* FCA action against Sprint and four other telecommunications companies, alleging that the companies were defrauding federal and state governments by overcharging them for electronic surveillance services. The Government elected not to intervene in Prather's *qui tam* action. In November 2013, the district court concluded that Prather could not show he was an "original source" of publicly disclosed information regarding the telecommunications companies' allegedly fraudulent activities and dismissed Prather's *qui tam* suit for lack of jurisdiction. We recently affirmed the district court's dismissal of Prather's *qui tam* action. *Prather I*, 847 F.3d at 1108.

While Prather's appeal of *Prather I* was pending, the Government filed its own FCA suit against Sprint. That action was transferred to the same district judge who had dismissed Prather's case. Prather moved to intervene in the Government's FCA action, maintaining that (1) the Government was pursuing an "alternate remedy" to Prather's *qui tam* action by filing its own FCA action instead of intervening in his earlier FCA suit; (2) under the FCA, he had the "same rights" in the Government's "alternate remedy" proceeding as he would have had in his *qui tam* action; and (3) he therefore had a right to a share of the proceeds from any award or settlement in this litigation. *See* 31 U.S.C. § 3730(c)(5) (2006).[1]

The district court denied Prather's motion to intervene on the basis of its dismissal of Prather's *qui tam* action. Because Prather could not bring a successful *qui tam* action on related

---

[1] Section 3730(c)(5) provides, in relevant part:

> [T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5) (2006). Henceforth all citations to this section of the FCA, 31 U.S.C. § 3730, reference the version in effect prior to the effective date of the 2010 amendments to the statute, which significantly changed the public disclosure and "original source" provisions under which Prather's 2009 *qui tam* action was dismissed. In particular, the 2010 amendments eliminated the designation of the public disclosure provision as jurisdictional. *Prather I*, 847 F.3d at 1102–03.

claims, the district court concluded, he had no standing to intervene in the Government's action. Prather timely appealed the district court's order.

## DISCUSSION

Under the FCA, private individuals with information about fraud against the Government may bring *qui tam* actions on behalf of the United States. The Government may elect to (1) intervene in such an action and take over its prosecution, 31 U.S.C. § 3730(b)(2); (2) "pursue its claim through any alternate remedy available to the Government," instead, *id.* § 3730(c)(5); or (3) decide not to take any action, allowing the private individual, known as the "relator," to pursue the claim to completion, *id.* § 3730(c)(3). In any of those scenarios, the relator who brought the *qui tam* action generally has a right to a share of any proceeds from the action. *Id.* § 3730(d). If the Government pursues an alternate remedy, the relator "shall have the same rights in such proceeding as [he] would have had if" the Government had intervened in the *qui tam* action. *Id.* § 3730(c)(5).

Prather asserts that the Government's own action against Sprint is an "alternate remedy" pursued in lieu of intervention in his earlier *qui tam* action. He maintains that he is therefore entitled to the same share of the Government's proceeds resulting from this action against Sprint as he would have obtained if his *qui tam* action had gone forward. *See id.* On that basis, he contends, he was entitled to intervene as of right. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) ("*Southwest Center*") (setting out the four-prong test for Federal Rule of Civil Procedure Rule 24(a) intervention as of right).

After the district court's denial of Prather's motion to intervene, the Government and Sprint reached a settlement, and the district court accordingly dismissed the case. Before turning to the merits of Prather's appeal, we consider whether this appeal is now moot.

**I**

The parties have not raised the mootness issue. Nonetheless we address the issue *sua sponte*, because, if "events change such that the appellate court can no longer grant 'any effectual relief whatever to the prevailing party,' any resulting opinion would be merely advisory," and the court would lack subject matter jurisdiction. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). Here, we consider the effect of the settlement and voluntary dismissal of the case in which Prather sought to intervene.

In some situations, the entry of final judgment in a case moots a putative-intervenor's appeal from the denial of his motion to intervene. *West Coast Seafood Processors Ass'n v. NRDC*, 643 F.3d 701 (9th Cir. 2011), for example, held that this court could not grant the appellant "any 'effective relief' by allowing it to intervene" "in a case that the district court ha[d] since decided, through [an] Order on Remedy and the subsequent final judgment, from which neither party ha[d] appealed." *Id.* at 704. In other circumstances, however, an intervention controversy can remain live even after final judgment is entered in the underlying case. *DBSI/TRI IV Ltd. Partnership v. United States*, 465 F.3d 1031 (9th Cir. 2006), for instance, concluded that the appeal in that case was not moot, "because, if it were concluded on appeal that the

district court had erred in denying the intervention motion, and that the applicant was indeed entitled to intervene in the litigation, then the applicant would have standing to appeal the district court's judgment." *Id.* at 1037 (quoting *Canatella v. California*, 404 F.3d 1106, 1109 n.1 (9th Cir. 2005)).

Outside of the special putative class action context, we have not specifically addressed whether the original parties' settlement after the denial of an intervention motion invariably moots the appeal of that denial. *Cf. Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997) (discussing the special intervention standard for motions to intervene to appeal denial of class certification). But at least three other circuits have considered the question, and all have held that the dismissal of an underlying case following settlement does not necessarily render moot a putative-intervenor's appeal. *See CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 475–76 (4th Cir. 2015) (settlement in civil RICO action); *Purcell v. Bank Atl. Fin. Corp.*, 85 F.3d 1508, 1511 n.3 (11th Cir. 1996) (class action settlement); *FDIC v. Jennings*, 816 F.2d 1488, 1491 (10th Cir. 1987) (settlement between agency and private persons). Most recently, after considering *DBSI* and *West Coast Seafood* along with more directly relevant cases from several other circuits, the Fourth Circuit concluded:

> We find more persuasive the reasoning of those courts holding that dismissal of the underlying action does not automatically moot a preexisting appeal of the denial of a motion to intervene. This is so because in many cases, the resolution of an action between the original parties is not determinative of the defendant's liability with respect to other

potential plaintiffs. In these circumstances, when the motion to intervene is made while the controversy is live and the subsequent disposition of the case does not provide the relief sought by the would-be intervenors (for example, money damages, as Appellants seek here), we can provide an effective remedy on appeal and therefore have jurisdiction.

*CVLR Performance Horses*, 792 F.3d at 475.

We agree with the Fourth Circuit, for the reasons it gave, that the parties' settlement and dismissal of a case after the denial of a motion to intervene does not as a rule moot a putative-intervenor's appeal. We note that to hold otherwise "might well provide incentives for settlement that would run contrary to the interests of justice." *Id.* at 474–75 (quoting *FDIC*, 816 F.2d at 1491).

Our question, then, is whether in the particular circumstances here, the settlement and dismissal of the underlying action "make[] it impossible for the court to grant 'any effectual relief whatever'" to the putative intervenor even if we were to determine that the district court erred in denying his intervention. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Our conclusion is that reversing the district court's order could afford Prather a possible avenue to some remedy, so the case is not moot.

Although we do not yet consider the merits, the FCA guides our preliminary consideration of whether Prather might have anything left to gain from this court deciding his intervention appeal. Prather moved to intervene in the

Government's action against Sprint so he could be afforded the "same rights" he would have received had the Government instead intervened in his *qui tam* FCA action. *See* 31 U.S.C. § 3730(c)(5). The "same rights" afforded under the statute would include a right to the same share of the proceeds as in the disposition of a *qui tam* FCA action. *See id.* § 3730(d). The settlement agreement between the Government and Sprint did not provide Prather with any such relief. Additionally, the "same rights" afforded in an alternate remedy proceeding would include the relator's right to object to the Government's direct settlement of an action with a defendant. *See id.* § 3730(c)(2)(B). Upon a relator's objection, the district court would need to determine, "after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." *Id.*

If we were to conclude Prather had a right to intervene in the Government's FCA action, he might be able to object to the settlement or otherwise seek his share of the proceeds from the Government. As it thus does not appear *impossible* for Prather to receive "any effectual relief whatever" if we determine that the district court erred in denying his motion to intervene as of right, *Church of Scientology of Cal.*, 506 U.S. at 12, we conclude that the Government's settlement agreement with Sprint and the dismissal of the underlying action do not moot this appeal. We therefore turn to the merits.

## II

### A

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), an applicant must satisfy a four-part test:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Southwest Center*, 268 F.3d at 817 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)). In denying Prather's motion to intervene, the district court held that Prather did not "have standing to intervene," because "he cannot bring a successful *qui tam* action." On appeal, the parties contest only whether Prather met the second prong of the intervention standard, an issue we review de novo. *See United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1393–94 (9th Cir. 1992).

An applicant seeking intervention is held to have "a 'significant protectable interest' in an action if (1) [the applicant] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (quoting *Nw. Forest Res. Council*, 82 F.3d at 837). The district court based its denial of Prather's motion to intervene here on its earlier dismissal of Prather's *qui tam* action. As Prather was not able to bring a *qui tam* action, the district court concluded, he had no rights to protect by intervening here. *See Prather v. AT &*

*T, Inc.*, 996 F. Supp. 2d 861, 871 (N.D. Cal. 2013), *aff'd*, 847 F.3d at 1108.

Prather contends, however, that the district court failed to consider the import of the Government's decision not to intervene in his *qui tam* case. According to Prather, he had a significant protectable interest, and his motion to intervene as of right therefore should have been granted, because his interest in this case is (1) the same as his interest would have been if the Government had intervened in his *qui tam* action; (2) protected under FCA § 3730(c)(5) and 3730(d); and (3) related to the Government's claims for recovery in this action. We cannot agree.

Section 3730(c)(5) protects Prather's rights only to the extent his rights would have been protected had the Government intervened in his *qui tam* action. As it turns out, if the Government had intervened in that action, Prather would not have been entitled to any recovery. He therefore lacks a significantly protectable interest in this case, the Government's separate action against Sprint.

**B**

Prather's contention that he would have been entitled to a relator's share had the Government intervened in his *qui tam* action is foreclosed by a key Supreme Court case interpreting the FCA, *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007). Where a *qui tam* action is brought on the basis of publicly disclosed information, the pre-2010 FCA mandated "a clear and explicit withdrawal of jurisdiction" if the action is not *brought* by the Government or an "original source." *Id.* at 468 (emphasis omitted). *Rockwell* held that a non-original-source relator's

jurisdictional defect is not cured by the Government's intervention. *Id.* at 476–78.

In *Rockwell*, the Government intervened in the relator's *qui tam* action; the court entered judgment for the Government and the relator. *Id.* at 464–66. The defendant then filed a post-verdict motion to dismiss the relator's claims on the grounds that (1) the relator was not an original source of the publicly disclosed information on which liability was based, and (2) the court therefore lacked jurisdiction to enter judgment in favor of the relator. *Id.* at 466. The relator and the Government maintained that the Government's intervention provided an independent basis of jurisdiction, and "any inquiry into [the relator]'s original-source status . . . was unnecessary because the government had intervened, making this an 'action brought by the Attorney General.'" *Id*. at 477. The Court squarely rejected the argument, holding that "[a]n action brought by a private person does not become one brought by the Government just because the Government intervenes and elects to 'proceed with the action.'" *Id.*

Prather's argument that he is entitled to some FCA recovery (and thus to intervene here) largely repeats the rejected argument in *Rockwell*. Under *Rockwell*, had the Government intervened in Prather's *qui tam* action, Prather's case still would have been dismissed under the former public disclosure bar. At that point, "once [Prather] ha[d] been determined to lack the jurisdictional prerequisites for suit," the FCA action would have "become[] an action brought by the Attorney General." *See id.* at 478. Prather, that is, could not have continued to pursue *his qui tam* action against Sprint even if the Government had intervened, although the Government could have gone forward on its own behalf.

But the precise issue here is not whether Prather could have continued as a relator in the suit. Instead, it is whether he would have been entitled to any recovery if the Government had intervened and, after his relator claim was dismissed, continued the suit on its own behalf. As the Third Circuit noted in *U.S. ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97 (3d Cir. 2000), "[i]t would not necessarily follow that [dismissed] relators could not be awarded a share of the . . . proceeds" from a successful Government-prosecuted FCA action, because "Congress may enact a statute providing for the payment of a reward or bounty to a non-party who assists the government's enforcement efforts." *Id*. at 103. *Merena* is correct, of course, that Congress could have provided for a reward in these circumstances. But it did not, as several considerations confirm.

First, *Rockwell*'s holding "that the District Court lacked jurisdiction to enter judgment in favor of [the jurisdictionally barred relator]," essentially forecloses Prather's argument that such a reward or bounty is available to him under the statute. 549 U.S. at 479. In setting aside entirely the monetary judgment entered in favor of the relator while preserving the Government's judgment, *Rockwell* necessarily indicated that a jurisdictionally barred relator is not entitled to *any* recovery under § 3730. *Id.* at 478–79.

Second, review of the language and structure of § 3730 supports this conclusion. A relator is entitled to share in the proceeds from an FCA action only if (1) the Government chooses not to intervene and the relator proceeds as the plaintiff on his own, 31 U.S.C. § 3730(d)(2), or (2) "the Government proceeds with an action *brought by a [private] person*," *id.* § 3730(d)(1) (emphasis added). Just the latter provision is relevant here, as Prather argues it is the

Government's intervention that would have entitled him to a share of the award.

But, as *Rockwell* made clear, once a relator is determined to lack the jurisdictional prerequisites to bring a *qui tam* FCA action, the case "becomes an action *brought by the Attorney General*." 549 U.S. at 478 (emphasis added). *Rockwell* contrasted that transformative effect of the dismissal of a relator's suit under the public disclosure bar with the statute's other provisions—citing, in particular, the relator's award provisions of § 3730(d)—that apply to "actions brought by a relator where the government intervenes but does not oust the relator." *Id.* at 477–78. If the Government takes over a case after a jurisdictionally barred relator is dismissed, the relator cannot collect an award under § 3730(d)(1), because that provision becomes inapplicable. In other words, once the action "brought by a [private] person" under § 3730(b) is dismissed for lack of subject matter jurisdiction, the hook for the relator's award provision, § 3730(d)(1), no longer exists.

Third, as we explained in *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995), "[t]he right to recovery clearly exists primarily to give relators incentives to bring claims . . . [and] the extent of the recovery is tied to the importance of the relator's participation in the action and the relevance of the information brought forward." *Id.* at 963–64 (footnote omitted). For instance, when the Government intervenes in a case, the statute generally mandates that the court award 15 to 25 percent of the proceeds to the relator, "depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). The statute prescribes a smaller recovery bracket—zero to ten percent of the proceeds from an action—for relators who bring cases primarily based on

information that had already been publicly disclosed by someone other than the relator. *Id.* § 3730(d)(1). Again, in determining the exact size of an award within that smallest bracket, courts are instructed to "tak[e] into account the significance of the information and the role of the person bringing the action in advancing the case to litigation."**[2]** *Id.*

These prescriptions regarding the size of a relator's recovery play an important role, alongside the public disclosure bar, in advancing the dual purposes of the 1986 FCA amendments: (1) "to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward," H.R. Rep. No. 99-660, at 23 (1986); and (2) "to discourage parasitic suits brought by individuals with no information of their own to contribute to the suit," *United States ex rel. Zaretsky v. Johnson Controls, Inc.*, 457 F.3d 1009, 1017 (9th Cir. 2006) (internal quotation marks and citation omitted), *abrogated on other grounds by United States. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1127–29 (9th Cir. 2015) (en banc). Allowing non-original-sources to recover under § 3730(d)(1) would not encourage actual sources of information about fraud to come forward, but instead encourage "parasitic" suits by "opportunistic plaintiffs who have no significant information to contribute," apart from information gleaned from others'

---

**[2]** If the relator prosecutes the action alone after the Government decides not to intervene, the statute prescribes a larger relator's share of 25 to 30 percent of the proceeds. *Id.* § 3730(d)(2). The bulk of the proceeds still goes to the Government, which is the real party in interest in all FCA actions, whether or not it intervenes. *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994).

public disclosures.[3] *See Graham Cty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294 (2010) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994)). Where the purpose of encouraging individuals with knowledge of possible fraud against the federal government is not served, "the relator should not be so rewarded." *United States ex rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 539 (9th Cir. 1998).

We conclude that the statute's *qui tam* recovery provisions in § 3730(d) do not apply to relators jurisdictionally barred under § 3730(e)(4).

## C

That the Government has pursued and secured a remedy against Sprint in this separate litigation does not alter our analysis or strengthen Prather's claim to a monetary award. And that is so, contrary to Prather's submission, even if the Government's remedy was based on the same allegations Prather made in his *qui tam* suit or arose out of an investigation prompted by Prather's initial *qui tam* action.

---

[3] Prather's argument that the first-to-file rule, 31 U.S.C. § 3730(b)(5), and similar procedural hurdles would sufficiently protect from rampant filing of FCA actions by non-original-sources is meritless. Reasoning that an opposite holding would "permit opportunistic plaintiffs with no inside information to displace actual insiders with knowledge of the fraud," we have held that, "in a public disclosure case, the first-to-file rule of § 3730(b)(5) bars only subsequent complaints filed after a complaint that fulfills the jurisdictional prerequisites of § 3730(e)(4)." *United States ex rel. Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 824–25 (9th Cir. 2005). Our reasoning in *Campbell* applies here, as well.

To recap: The FCA protects rights to relief for both the Government and a proper relator, but the Government is always the real party in interest. *See Killingsworth*, 25 F.3d at 720. Even if a relator files a *qui tam* action on behalf of the Government under § 3730(b), "the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. 3730(c)(5). If the Government chooses to pursue a remedy through some other proceeding, the FCA mandates that the relator be afforded "the same rights in such proceeding as [he] would have had if the action had continued under [§ 3730, the FCA's civil action provisions]." *Id.*

The alternate remedy provisions have no application here. Prather cannot obtain a monetary award due to the Government's pursuit of an "alternate remedy" to a proceeding in which he could not possibly have obtained any remedy.

An Eighth Circuit case addressing a similar situation, *United States ex rel. Newell v. City of St. Paul*, 728 F.3d 791 (8th Cir. 2013), is informative. As in Prather's *qui tam* action, the Government declined to intervene in Newell's FCA action, and the relator's action was dismissed on the basis of the public disclosure bar. *Id.* at 795. Newell appealed the district court's dismissal order, arguing that the Government had used his *qui tam* action as a bargaining chip in a settlement agreement in an unrelated, non-FCA case. *Id.* at 798. Newell contended that the Government's "settlement, unlike a discretionary decision not to intervene in a *qui tam* action, enabled the government to obtain an 'alternate remedy' that entitle[d] him to a share of the settlement proceeds under § 3730(c)(5) of the FCA." *Id*. The Eighth

Circuit disagreed, ruling that "*even if* the . . . [Government's settlement was] an 'alternate remedy,' Newell would not be entitled to a share of that remedy because his FCA claims were subject to dismissal under the public disclosure bar." *Id*. at 799.

As in *Newell*, the Government's FCA action and its settlement with Sprint do not alter the district court's prior determination, which we affirmed, *Prather I*, 847 F.3d at 1108, that Prather was jurisdictionally barred from bringing his 2009 *qui tam* action. Although the asserted connection between Newell's *qui tam* action and the Government's settlement with the defendant on an unrelated matter was more attenuated than the asserted connection here, the precise relationship between the Government's action against Sprint and Prather's *qui tam* action is of no moment.

Here is why: Assuming that the Government brought this action against Sprint on the same grounds upon which Prather had brought his *qui tam* action, as Prather alleges,[4] Prather's failure to meet the original source requirement is still preclusive of any judgment in his favor. Because of that failure, dismissal of Prather's claim for monetary recovery was mandatory. That is, Prather's suit could not have continued as a § 3730(b) *qui tam* action regardless of the Government's actions in that case or in this litigation. *See Rockwell*, 549 U.S. at 477. Rather, like the relator in *Rockwell*, Prather's private action would have been dismissed even if the Government had intervened in it, and the case

---

[4] "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Southwest Center*, 268 F.3d at 820.

would have continued as a § 3730(a) action—an FCA action "brought by the Attorney General" alone. *See id.* at 478. In such a posture, Prather, like Newell, would have had *no* right to recovery, and so cannot recover here under the "alternate remedy" provision of the statute. The equivalent of no right to recovery (in the original action) is no right to recovery (in this action).

In sum, Prather cannot obtain a monetary bounty under the FCA on his jurisdictionally barred claims, whether in the action he brought as a *qui tam* plaintiff, via the "same rights" provision of § 3730(c)(5), or, as he attempts to do here, by joining a related FCA action brought by the Government after the dismissal of his *qui tam* action.

## CONCLUSION

The appeal of the district court's denial of Prather's motion to intervene is not moot. On the merits, however, Prather did not have a significantly protectable interest in the Government's FCA action against Sprint. His prior filing of a related, but jurisdictionally barred, *qui tam* action did not entitle him to any award under the FCA. We therefore conclude that Prather was not entitled to intervene as of right in the Government's FCA action against Sprint.

**AFFIRMED.**