# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2220
_____

In re: Baycol Products Litigation.

------------------------------

United States of America, ex rel. Laurie Simpson,

*Plaintiff*,

Laurie Simpson,

*Plaintiff Relator - Appellant*,

v.

Bayer Healthcare, doing business as Bayer Healthcare Pharmaceuticals; Bayer
Pharmaceuticals Corporation; Bayer Corporation; Bayer A.G.,

*Defendants - Appellees.*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: February 7, 2017
Filed: September 8, 2017
_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Laurie Simpson appeals the district court's dismissal of her *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729-3733 (2006), for lack of subject matter jurisdiction.[*] The court concluded it lacked jurisdiction because Simpson's action was based on public disclosure of allegations or transactions, and she was not an original source of the information on which her allegations were based. *See id.* § 3730(e)(4)(B). Because the district court misapplied circuit precedent on the meaning of "original source," we reverse and remand for further proceedings.

The underlying facts and most of the procedural history are laid out extensively in this court's decision in *In re Baycol Products Litigation*, 732 F.3d 869 (8th Cir. 2013). We therefore recite only the facts and procedural history that are relevant to the issue raised here.

In 2006, Simpson filed a *qui tam* action against Bayer Healthcare as a relator on behalf of the government. *See* 31 U.S.C. § 3730(b)(1). She alleged that Bayer knew, but downplayed, the risks that use of Baycol, a statin drug, would cause rhabdomyolysis. She also alleged that Bayer misrepresented Baycol's efficacy when compared to competing drugs, and paid illegal kickbacks to physicians to increase Bayer's share of the market for statin drugs. Simpson claimed that Bayer fraudulently caused the government to make reimbursements for Baycol prescriptions through federal health insurance programs. She further asserted that Bayer fraudulently induced the Department of Defense to enter into two contracts for the purchase of Baycol.

---

[*]All citations are to the 2006 version of the Act that was in effect when Simpson brought her action. The statute, including the provision at issue here, was amended in 2010. Patient Protection & Affordable Care Act, Pub. L. No. 111-148, tit. X, § 10104(j)(2), 124 Stat. 119, 901-02 (2010).

The district court first dismissed Simpson's suit because she failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). On appeal, this court affirmed the dismissal of Simpson's claim relating to federal health insurance programs. 732 F.3d at 877-80. But a divided panel concluded that Simpson adequately pleaded her fraudulent-inducement claim regarding the Department of Defense contracts, and reversed the dismissal of that claim. *Id.* at 875-77.

On remand, Bayer moved again to dismiss, this time arguing that the court lacked subject matter jurisdiction because Simpson's action was based on allegations or transactions that had been publicly disclosed. Bayer urged that Simpson had not demonstrated, as required by the Act, that she was an original source of the information on which her allegations were based.

The False Claims Act allows private citizens, acting on the behalf of the United States, to recover damages from any person who knowingly makes a false or fraudulent claim for payment or approval upon the United States, or who submits a false record or statement in support of such a claim. 31 U.S.C. §§ 3729(a)(1)-(2), 3730(b)(1). The Act limits, however, when a citizen may proceed based on allegations or transactions that have been publicly disclosed:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

§ 3730(e)(4)(A). An "original source" is an "individual who has direct and independent knowledge of the information on which the allegations are based and has

-3-

voluntarily provided the information to the Government before filing an action . . . which is based on the information." § 3730(e)(4)(B).

The district court granted Bayer's motion to dismiss. The court reasoned that information underlying Simpson's allegations—that Bayer allegedly concealed Baycol's risks in its marketing efforts, and that Bayer had entered into contracts with the Department of Defense—previously had been disclosed in lawsuits, news articles, public filings, and medical literature. The court thus concluded that it lacked jurisdiction under § 3730(e)(4) unless Simpson was an original source. The district court then ruled that to be an original source, Simpson must have direct and independent knowledge of the communications that form the basis of her fraudulent-inducement claim. The court said that she "must demonstrate knowledge that Bayer actually sent false and misleading communications to persons with the DoD with the intent to fraudulently induce the DoD to execute" the two Baycol contracts. Because Simpson did not demonstrate that she "had direct or independent knowledge of **any** communication between Bayer and the DoD that form the basis of the fraudulent inducement claim," the court dismissed the action.

Our precedent, however, does not require Simpson to have direct and independent knowledge of Bayer's allegedly false communications to the Department of Defense. In *Minnesota Association of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1040 (8th Cir. 2002), this court concluded that "to qualify as an original source, a relator does not have to have personal knowledge of all elements of a cause of action." *Id*. at 1050. As long as the relator has "direct knowledge of the true state of the facts," she can be an original source even though her "knowledge of the misrepresentation is not first-hand." *Id.*; *accord United States ex rel. Newell v. City of St. Paul*, 728 F.3d 791, 797 (8th Cir. 2013).

*Nurse Anesthetists* adopted the textual analysis of *United States ex rel. Springfield Terminal Railway Co. v. Quinn*, 14 F.3d 645, 656 (D.C. Cir. 1994). The

-4-

Act requires the relator to possess direct and independent knowledge of the "information" on which her allegations are based, not of the "transaction," a term used earlier in the same provision. 31 U.S.C. § 3730(e)(4)(B). *Springfield Terminal* reasoned that the public disclosure bar thus does not dictate that a relator must "possess direct and independent knowledge of *all* of the vital ingredients to a fraudulent *transaction*." 14 F.3d at 656-57. Rather, "direct and independent knowledge of *any* essential element of the underlying fraud transaction" is sufficient to give the relator original-source status under the Act. *Id.* at 657. Reading "information" as synonymous with "transaction," said the court, would "undo Congress' careful choice of wording." *Id.* It also would not seem to serve the purposes of the Act, for the government already knows about communications made to the government by an alleged defrauder. *Id.*

We address here only the ground relied upon by the district court in granting Bayer's motion to dismiss. The district court did not reach other arguments raised by Bayer. On the question of original source, the district court did not determine whether Simpson had direct and independent knowledge of the "true state of the facts," namely, that Bayer allegedly possessed evidence to know that Baycol was not as efficacious as represented and caused increased risks of rhabdomyolysis. Nor did the district court address whether Simpson's claim is barred by the statute of limitations. These matters should be addressed by the district court in the first instance.

*        *        *

The judgment of the district court is reversed, and the case is remanded for further proceedings.

LOKEN, Circuit Judge, dissenting.

-5-

I would affirm for the reasons stated in the district court's thorough opinion.

_____