contrary to what the prosecutor knew to be the truth: that Jelks had attempted to introduce expert testimony to support his self-defense justification. When the prosecutor characterized the victim as "an unarmed man" who "had no weapon," she knew that the gunshot powder residue on the victim's hands tended to show the contrary. She took advantage of the court's ruling the evidence on the gunshot residue inadmissible to give the impression that any such test results were unfavorable to Jelks's case, when she knew that they were favorable to his defense.

It is improper for the prosecutor to suggest inferences she knows to be false or has very strong reason to doubt. *See United States v. Blueford*, 312 F.3d 962, 968 (9th Cir.2002). Here, however, the prosecutor's statements did not so infect the trial with unfairness as to make the resulting conviction a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (citation omitted).

The district court's decision on this ground is, accordingly, AFFIRMED.

**COUNTY OF OKANOGAN; Early Winters Ditch Company; Lundgren Limited Family Partnership; Ron Vanderyacht; David C. Jones; Frances A. Kaul, Plaintiffs–Appellants,**

v.

**NATIONAL MARINE FISHERIES SERVICE; U.S. Fish and Wildlife Service, U.S. Forest Service; Harv Forsgren, Regional Forester; Sonny J. O'Neal, Supervisor Okanogan National Forest, Defendants–Appellees,**

**Washington Environmental Council; Okanogan Wilderness League; Center for Environmental Law and Policy; American Rivers; Trout Unlimited; Defenders of Wildlife, Defendants–Intervenors–Appellees.**

No. 02–35512.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2003.

Decided Aug. 14, 2003.

**740**

Before: REAVLEY,* TASHIMA, and PAEZ, Circuit Judges.

## MEMORANDUM **

Appellants argue that the Forest Service lacked the authority to restrict the use of the Early Winters Ditch and the Skyline Irrigation Ditch to maintain instream flow levels for the protection of fish under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–44. We agree with the district court that the placement of restrictions in the right of way permits was within the authority of the Forest Service, and affirm.

Whatever questions exist as to the standing of the various appellants, they are represented by the same counsel and make the same arguments, and the Early

Winters Ditch Company as a permit holder indisputably has standing. We accordingly proceed to the merits. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263–64 & n. 9, 97 S.Ct. 555, 50 L.Ed.2d 450 (holding that where one plaintiff has standing, "we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit").

At bottom, appellants argue that the Forest Service does not have the authority to condition the use of the rights of way in a national forest on the maintenance of instream flows because such restrictions deny them their vested water rights under state law. The ditch rights of way granted over federal land, from their inception, were subject to termination at the discretion of the federal government through its designated agent. The more recent permits expressly state that they do not convey water rights and are subject to amendment "when, at the discretion of the authorizing officer, such action is deemed necessary or desirable to incorporate new terms, conditions and stipulations as may be required by law, regulation, land management plans, or other management decisions." The ESA and regulations promulgated thereunder require federal agencies to consult with designated consulting agencies whenever a federal action "may affect" a threatened or endangered species. *See* 50 C.F.R. § 402.14(a) (2002). The regulations provide that such consultation is required for "all actions in which there is discretionary Federal involvement or control," *id.* § 402.03, including the granting of permits or rights of way, *id.* § 402.02(c).

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. Rule 36–3.

Appellants do not argue on appeal that the Forest Service or the other federal agencies violated any of the requirements or protocols of the ESA. Instead, they in effect argue that compliance with the ESA was not authorized because such compliance would deny them their vested water rights under state law. We cannot agree with this argument for several reasons.

There is authority that the ESA does not grant powers to federal agencies they do not otherwise have. The Supreme Court has stated that section 7 of the ESA "amplifies the obligation of federal agencies to take steps *within their power* to carry out the purposes of this act." *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 183, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1979) (emphasis added, brackets omitted) (quoting 119 CONG. REC. 42913 (1973)).

However, we are of the view that the Forest Service had the authority to restrict the use of the rights of way to protect the endangered fish. The permits themselves, from their inception, provided the government with unqualified discretion to restrict or terminate the rights of way.

The Federal Land Policy and Management Act of 1976 (FLPMA) authorizes the Secretaries of Interior and Agriculture to "grant, issue, or renew rights-of-way over" public lands for "ditches ... for the ... transportation ... of water." 43 U.S.C. § 1761(a)(1). Such rights of way "shall contain ... terms and conditions which will ... minimize damage to ... fish and wildlife habitat and otherwise protect the environment" and that will "require compliance with applicable ... water quality standards established by or pursuant to applicable Federal or State law." *Id.* § 1765(a). In addition, the National Forest Management Act requires the Forest Service to specify guidelines for land management plans that "provide for ... watershed, wildlife, and fish" and "provide for

diversity of plant and animal communities." 16 U.S.C. § 1604(g)(3)(A) & (B). The Organic Administration Act, 16 U.S.C. § 475, provides that "[n]o national forest shall be established, except to improve and protect the forest within the boundaries, or for the purpose of securing favorable conditions of water flows...." The Multiple Use Sustained-Yield Act of 1960 (MUS-YA), 16 U.S.C. § 528, provides that "[i]t is the policy of the Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes." These statutes, in our view, give the Forest Service authority to maintain certain levels of flow in the rivers and streams within the boundaries of the Okanogan National Forest to protect endangered fish species.

The FLPMA provides that "[n]othing in this Act ... shall be construed as terminating any valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this Act," and that "[a]ll actions by the Secretary concerned under this Act shall be subject to valid existing rights." Pub.L. No. 94–579, § 701(a) & (h), 90 Stat. 2743, 2786–87, *reprinted in* 43 U.S.C.A. § 1701 historical note. Under this savings clause, the government could not under the FLPMA divest a private party of an existing "land use right" or other "valid existing rights," but as described above, the plaintiffs' rights of way were always, by their written terms, revocable at the discretion of the federal government. Appellants did not establish that they had vested rights to use the ditches to supply their water needs prior to the enactment of the FLPMA in 1976. On the contrary, the 1901 Act under which the permits were earlier granted provided that right of way permits did not grant vested property rights. The 1901 Act stated that the Sec-

742

retary of Interior could grant rights of way through forest reservations for ditches, but that "any permission given by the Secretary of the Interior under the provisions of this section may be revoked by him or his successor in his discretion, and shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park." Act of Feb. 15, 1901, ch. 372, 31 Stat. 790 (codified at 43 U.S.C. § 959) (repealed 1976).

Appellants rely on *United States v. New Mexico*, 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978) (*"US v. NM"*). This case held that under a longstanding "implied-reservation-of-water doctrine," *id.* at 701, Congress did not, in enacting the Organic Administration Act and the MUSYA, intend the federal government to reserve water rights for wildlife preservation purposes when it set aside lands for national forests. *US v. NM* did not address the power of the Forest Service to restrict the use of rights of way over federal land. As discussed above, the FLPMA specifically authorizes the Forest Service to restrict such rights of way to protect fish and wildlife and maintain water quality standards under federal law, without any requirement that the Forest Service defer to state water law. To quote another Supreme Court case, the pending case "is not a controversy over water rights, but over rights of way through lands of the United States, which is a different matter, and is so treated in the right-of-way acts before mentioned." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 411, 37 S.Ct. 387, 61 L.Ed. 791 (1917).

AFFIRMED.

---

Thule Thor–Sven ROBERTSSON, Petitioner–Appellant,

v.

Terry STEWART, Director, Respondent–Appellee.

No. 01–17444.

D.C. No. CV–00–01679–JWS.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 4, 2003.*

Decided Aug. 18, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).