**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| IDAHO CONSERVATION LEAGUE, | No. 20-35033 |
| Plaintiff-Appellee, | D.C. No. 1:18-cv-00044-BLW |
| v. | |
| UNITED STATES FOREST SERVICE, | MEMORANDUM[*] |
| Defendant, | |
| and | |
| SALMON HEADWATERS CONSERVATION ASSOCIATION LLC, | |
| Intervenor-Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted May 3, 2021
Portland, Oregon

Before: W. FLETCHER, BEA, and FRIEDLAND, Circuit Judges.
Dissent by Judge BEA

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Salmon Headwaters Conservation Association ("SHWCA"), on behalf of its members, claims entitlement to Ditch Bill Easements ("DBEs") for diversions in the Sawtooth Valley of Idaho. SHWCA members have filed DBE applications with the United States Forest Service ("the Forest Service"). As of this appeal, the applications remain pending.

The Idaho Conservation League ("ICL") sued the Forest Service for failing to initiate consultation under Section 7(a)(2) of the Endangered Species Act ("ESA"), codified at 16 U.S.C. § 1536(a)(2), for the use of the diversions. SHWCA moved to intervene in the action. The district court denied intervention as of right at the liability stage after finding that the Forest Service adequately represented SHWCA's interests. The district court, however, allowed SHWCA to permissively intervene in the remedies phase.

Following cross-motions for summary judgment, the district court held at the liability stage that the Forest Service violated the ESA by failing to engage in consultation over the diversions. Pursuant to a stipulated remedy between ICL and the Forest Service, the Forest Service must begin the consultation process.

SHWCA appeals the denial of intervention and argues the Forest Service has no authority to initiate Section 7 consultation because the issuance of a DBE is non-discretionary. *See Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1219

(9th Cir. 2015) (explaining that ESA consultation is not "triggered" when agency action is non-discretionary).  From this, SHWCA argues that it possesses a divergent interest from the Forest Service and should have been allowed to intervene as of right in the underlying suit.

1.  SHWCA has standing to appeal the denial of intervention.  A litigant whose motion to intervene is denied will usually have standing to appeal that denial, independent of whether it would have standing to appeal on the merits.  *See W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council*, 643 F.3d 701, 705 (9th Cir. 2011) ("[O]ne must not conflate the issue in the underlying litigation . . . with the controversy in this appeal over WCSPA's motion to intervene."); 15A Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 3902.1 (2d ed. April 2021 update) ("Persons denied intervention in the trial court clearly have standing to appeal the denial of intervention, but if intervention was properly denied have no greater right to appeal the judgment entered between others than other nonparties.").[1]

---

[1] The dissent argues an unsuccessful intervenor only has standing to appeal the denial of intervention if it has a concrete injury at stake.  But SHWCA has shown in its submissions to our court that it has a concrete injury here because the consultation process itself creates uncertainty about the status of its members' possessory rights to the diversions, which adversely affects their property values.

For similar reasons, mootness does not preclude our review because SHWCA has demonstrated that the judgment will cause its members a concrete and particularized injury that is actual or imminent and that would likely be redressed if they were permitted to appeal and prevailed on the merits on appeal. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482 (9th Cir. 2011); *United States v. Sprint Commc'ns*, 855 F.3d 985, 990 (9th Cir. 2017) (holding that an appeal from denial of intervention as of right is not moot if reversing the district court's order could afford the putative intervenor "a possible avenue to some remedy"). The consultation process, irrespective of its outcome, causes injury to SHWCA members because their claimed DBE rights may not be subject to consultation in the first place. As a result of the district court's judgment at the liability phase, SHWCA members are now uncertain about the status of their possessory rights to the diversions, which adversely affects their property values. Because SHWCA has demonstrated that its members will be adversely affected by the judgment, and because a successful appeal could remedy the members' injuries by clarifying their water rights, SHWCA's appeal of the order denying intervention is not moot.

2. Although SHWCA has standing to appeal the denial of intervention, the district court properly denied SHWCA's motion to intervene. In order to show that

4

it was entitled to intervene as of right under Federal Rule of Civil Procedure 24(a), SHWCA had to demonstrate that: (1) its motion was timely; (2) it had a "'significantly protectable interest' in the action"; (3) the disposition of the action "would impair or impede [SHWCA's] ability to protect that interest"; and (4) its interests may have been "inadequately represented by the other parties." *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)). The relevant question in assessing if SHWCA has standing to appeal its denial of intervention to begin with is whether it has shown sufficient interest in the outcome of the litigation *now*. But on the merits of the motion to intervene, the question is whether SHWCA showed that it met the four-part intervention standard *when it moved to intervene. See Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) ("Intervenors, however, failed to identify this potential argument at the time of their motion, and may not do so for the first time after trial."). SHWCA argues for the first time on appeal that the Colorado Ditch Bill, 43 U.S.C. § 1761(c), created a non-discretionary duty for the Forest Service to issue DBEs to statutory-compliant diversions. But SHWCA had not adequately explained the nature of its claimed interests—or how those interests were not adequately represented by the Forest Service—while the motion was

5

before the district court.  Because this argument was not presented to the district court, we affirm the denial of intervention.

3.  At the conclusion of the liability phase, the district court wrote that under the Colorado Ditch Bill, the Forest Service retains jurisdiction to place conditions on a DBE for the benefit of listed species, with the consequence that they are subject to consultation.  Because SHWCA members did not participate in the liability phase, they are not bound by the district court's determination that DBEs for which they have filed applications are subject to consultation.

**AFFIRMED.**[2]

---

[2] The State of Idaho's motion for leave to file an amicus brief in support of SHWCA is GRANTED (DE 33).

*Idaho Conservation League v. Salmon Headwaters Conservation*, No. 20-35033

BEA, Circuit Judge, Dissenting:

Article III limits the jurisdiction of the federal courts to actual "Cases" and "Controversies." U.S. CONST. art. III, § 2. This court lacks the authority to rule on a dispute, no matter how fleetingly, unless the party invoking federal jurisdiction demonstrates standing to sue by first alleging and then proving a concrete, traceable, and redressable harm. The Salmon Headwaters Conservation Association ("SHWCA"), an unsuccessful intervenor in this now-concluded litigation between the Idaho Conservation League ("ICL") and the U.S. Forest Service, failed to prove standing and thus cannot challenge the judgment below on its own. Because my colleagues exceed our jurisdiction by reaching the merits of an appeal that should have been dismissed, I respectfully dissent.

I.

This case began when the ICL sued to compel the Forest Service to consult with the U.S. Fish and Wildlife Service and the National Marine Fisheries Service about endangered fish in Idaho's Sawtooth Valley pursuant to Section 7 of the Endangered Species Act, 16 U.S.C. § 1536. The ICL claimed that permit and easement applications for private water diversions currently pending before the Forest Service amounted to discretionary agency actions within the scope of the consultation requirement. The SHWCA, an association of landowners with private water diversions and pending easement applications, moved to intervene under

Federal Rule of Civil Procedure 24 to defend its members' preexisting water rights, which it claimed could be impacted by the subject matter of the litigation. The district court denied intervention after concluding that the SHWCA failed to set out an interest that was not adequately represented by the Forest Service. Instead, the court allowed the SHWCA to intervene permissively at the remedy stage of the litigation in case the ICL asked the court to compel the Forest Service to impose interim regulations on private water rights prior to the completion of the consultation process. Despite this allowance, the SHWCA appears not to have meaningfully participated in remedial discussions.

The district court held that actions taken on the permits and easements were discretionary agency actions subject to the consultation requirement, awarded summary judgment to the ICL, and ordered the Forest Service to engage in consultation. The court entered final judgment, the terms of which required consultation to begin according to a stipulated timeline agreed upon by the ICL and the Forest Service; the SHWCA was not named in the judgment and did not join in the stipulation. The Forest Service voluntarily withdrew its initial notice of appeal and declined to seek further review. The SHWCA, however, subsequently appealed the final judgment on to the merits and as to the denial of the motion to intervene, arguing that the district court's decision subjected its members' water rights to the risk of future regulation.

2

II.

Article III requires the party invoking federal jurisdiction to demonstrate standing by setting out some concrete, particularized, and actual or imminent harm traceable to the challenged conduct and redressable by the court. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The invoking party must prove standing "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 2208 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). At summary judgment, that means producing "evidence and specific facts" of concrete harm, traceability, and redressability. *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005, 1012 (9th Cir. 2018).

Standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997)). Where, as here, an actual or unsuccessful intervenor seeks to appeal independently of an original party to the case, the intervenor must establish that the judgment below inflicted a concrete harm on "a judicially cognizable interest of [its] own." *Id.* at 707; *Diamond v. Charles*, 476 U.S. 54, 62–64 (1986); *Didrickson v. Dep't of Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992).

The ICL invoked the district court's jurisdiction by first alleging and then producing some evidence of its members' standing. Three ICL members who live

3

near the Sawtooth Valley submitted declarations detailing their recreational, aesthetic, educational, and professional interests in the area's waterways and aquatic life. Each of the three averred that the Forest Service's failure to consult with federal wildlife agencies regarding the impact of private water diversions on protected fish directly harmed these interests. *See* Dkt. No. 26.3–5, *Idaho Cons. League v. U.S. Forest Serv.*, Case No. 1:18-cv-44 (D. Idaho Dec. 14, 2018). In other words, the ICL adduced some evidence that the Forest Service harmed ICL's members by failing to comply with statutory requirements designed to protect their interests. *See Lujan*, 504 U.S. at 572 & n.7. The district court redressed this injury by awarding the ICL summary judgment and issuing the requested order compelling the Forest Service to engage in consultation.

By contrast, the SHWCA failed to provide evidence of its members' standing for at least two reasons. First, the SHWCA failed to produce evidence that the judgment below inflicted concrete harm on any of its members' "judicially cognizable interest[s]." *Hollingsworth*, 570 U.S. at 707. The SHWCA argues for the first time on appeal that the "district court's order impaired SHWCA's ability to protect [its members'] property interests from government control" by implying that the Forest Service has discretionary authority to regulate permanent easements for private water diversions granted by Congress through the Colorado Ditch Bill Act, 43 U.S.C. § 1761. Reply Br. 9. Never mind that arguments, even arguments

4

for standing, are generally forfeited or waived when presented this late in the proceedings. *See California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (refusing to consider "a novel alternative theory of standing" not argued below or presented on certiorari). Never mind that fear of future regulation does not establish a concrete and imminent injury because there are multiple contingent steps between consultation and the Forest Service deciding to enforce new regulations on private water diversions. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting a "speculative" injury theory that "relie[d] on a highly attenuated chain of possibilities"). Rather, the SHWCA's argument fails simply because "arguments in briefs are not evidence" and the limited evidence it *did* submit is plainly insufficient. *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015).

The three declarations submitted by the SHWCA "do not affirmatively show personal knowledge of specific facts" from which one can infer a concrete injury to a protected right as required at the summary judgment stage. *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (cleaned up); *see Lujan*, 504 U.S. at 561; *Ctr. for Biological Diversity*, 894 F.3d at 1012–14. The first and second declarations were submitted by SHWCA founder Jon Christianson and merely describe the association's purpose. The third declaration was submitted by SHWCA member W. Michael Humphreys, who owns an agricultural property irrigated in part by water diverted from public lands. The two-page Humphreys Declaration states that

5

Forest Service representatives have asked to enter his land "to implement the process of consultation" and have "made it clear" that the agency "will require new and specific operation and maintenance requirements" for his diversions and "is currently in the process of undertaking these measures respecting [his] property." Dkt. No. 17-2, at 2. *Which* measures? *When* will these measures be undertaken? *How* will the measures injure Humphreys, and *what* is the nature of the injury? Because the Humphreys Declaration is silent on these factual points, it fails to set out evidence of concrete harm.

In *TransUnion*, the Supreme Court held that mere statutory violations are not enough to establish Article III standing. Ramirez sued and obtained a judgment against a credit reporting agency on behalf of an over 8,000-person class for including inaccurate information in their credit reports and for failing to comply with procedures mandated by the Fair Credit Reporting Act. The credit agency had also disseminated the inaccurate credit reports of about 2,000 class members to third parties. 141 S. Ct. at 2200–02. The Court held that inaccuracies in a consumer's internal credit file did not inflict a concrete injury unless the file had been transmitted to third parties and thereby caused reputational harm. *Id.* at 2209. The Court rejected the argument that the inaccuracies themselves injured class members by raising the risk of future harm because such claimed injury was "too speculative to support Article III standing" and because "the plaintiffs did not

6

demonstrate a sufficient likelihood" that the inaccurate reports would be requested by and provided to third parties. *Id.* at 2212. Only the named plaintiff and the 2,000 class members whose reports were disseminated had standing because only these plaintiffs had proven a concrete harm. *Id.* at 2214.

In *County of Okanogan v. National Marine Fisheries Service*, 347 F.3d 1081 (9th Cir. 2003), by contrast, our court found that landowners who held permits for water diversions had standing to challenge conditions placed on those permits by the Forest Service. While considering modifications to existing permits, the Forest Service had engaged in consultation with federal wildlife agencies that concluded additional conditions were required to protect endangered fish. *Id.* at 1084. The Forest Service decided to impose new conditions on the permits that expressly limited the amount of water that permit holders could divert for private use. *Id.* Thus, our court held that the permit holders had standing to challenge the Forest Service's statutory authority to impose the conditions. *Id.*

Here, the Humphreys Declaration states a general worry that the Forest Service may inflict harm in the future by failing to respect the property rights that the SHWCA believes were conferred upon its members by the Colorado Ditch Bill Act. As in *TransUnion*, the Humphreys Declaration fails to state facts which set out a sufficient risk of future harm or to identify any specific concrete harm that would result from potential new regulatory controls, if imposed. We do not know

7

whether Humphreys will need to spend money to comply with the requirements, will suffer a reduction in usable water, will endure other harms because of the regulatory effort, or will suffer no harm at all. Unlike the plaintiffs in *County of Okanogan*, the SHWCA has not identified a particular offending regulatory action *or* a concrete harm that such regulatory action would inflict. In effect, the Humphreys Declaration states that bureaucrats talked about what they *may* attempt to require in the future with respect to his property. That may be cause for future vigilance, but it is not yet an imminent "Case" or "Controversy." The absence of specifics is understandable given that consultation is years away from completion and may or may not prompt any regulatory action at all. But that lack of ripeness only further suggests that this dispute is not ready for judicial resolution and does not excuse the SHWCA from its burden on standing. *See In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (cases must involve "a substantial controversy" about issues that are "definite and concrete, not hypothetical or abstract" (cleaned up)).

Second, the SHWCA failed to produce any evidence that the risk of regulation is "fairly traceable" to the judgment below. *California*, 141 S. Ct. at 2113. That is not surprising because, as my colleagues concede, Mem. Dispo. 6, the SHWCA and its members were *not parties* to the case and *are not bound* by the resulting judgment. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011); 7AA WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1789 (3d ed. Apr. 2021). The

8

SHWCA's members are not estopped from challenging future Forest Service actions impacting their private water diversions and would not be disadvantaged by stare decisis when doing so because "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (cleaned up). On their own terms, the judgment and consultation order in this case do not require the Forest Service to initiate consultation as to any private water diversion that the agency or a court of law concludes is outside the agency's "discretionary involvement or control[.]"

The hypothetical risk of regulation does not arise from the judgment below, but instead flows from preexisting statutes and regulations authorizing the Forest Service to manage public lands. The Humphreys Declaration makes no connection between the district court's decision and the reported statements by Forest Service employees that the agency will soon "implement[]" new "measures." It is therefore "purely speculative" whether the potential measures referenced in the Humphreys Declaration "can be traced" to the judgment "or instead result from decisions made by" the Forest Service without regard to the judgment. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42–43 (1976); *see also Allen v. Wright*, 468 U.S. 737, 758–59 (1984) (private school segregation not traceable to federal tax policy favorable to private schools because the causal relationship was unclear).

9

The SHWCA produced no evidence of concrete harm traceable to the judgment below and therefore lacks Article III standing. Because our jurisdiction is at an end, "the only function remaining … is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

## III.

My colleagues nevertheless assume jurisdiction over this appeal based on two theories that breathe life into a not-yet-controversy. Neither are persuasive.

## A.

First, my colleagues assert that unsuccessful intervenors always have standing to appeal the denial of intervention. Mem. Dispo. 3. That is not correct.

In the typical case, the original parties invoke federal jurisdiction by initiating an action and seeking review on appeal. Because the court already *has* jurisdiction, "an intervenor who performs neither of those functions and no other function that *invokes* the power of the federal courts need not meet Article III standing requirements." *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014). To appeal a decision on its own, however, "an intervenor must independently demonstrate standing." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019). This jurisdictional rule must be satisfied *before* the court engages with the challenged ruling. For this reason, the Supreme Court has

10

repeatedly dismissed intervenor appeals for lack of standing *regardless* whether intervention was properly granted below. *See, e.g.*, *id.*; *Hollingsworth*, 570 U.S. at 705–07; *Diamond*, 476 U.S. at 64. Standing is an "irreducible constitutional minimum" for any exercise of federal jurisdiction, and Rule 24's intervention provisions do not and cannot jump the analytical queue by requiring courts to consider an appeal from the denial of intervention without first considering standing. *Lujan*, 504 U.S. at 560.

The denial of intervention under Rule 24 is not a "procedural injury" that automatically gives rise to Article III standing. Parties seeking to invoke federal jurisdiction based on a procedural deprivation must prove that the procedure protects some underlying "*concrete interest*[]" from injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (quoting *Lujan*, 504 U.S. at 572 n.7); *see id.* at 497 ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). The Supreme Court has repeatedly held that parties lack standing to invoke federal jurisdiction to enforce "a procedural right *in vacuo*" without proof of an injury in fact. *Id.* at 496; *see, e.g.*, *TransUnion*, 141 S. Ct. at 2210–14; *Spokeo, Inc. v. Robins*, 136 S Ct. 1540, 1549 (2016); *Lujan*, 504 U.S. at 572. Rule 24 recognizes that it may often be good policy to allow the participation of a broad range of parties in an established case or controversy. But good policy is not the standard for Article III standing, and an unsuccessful

11

intervenor must demonstrate standing to appeal the denial of intervention independently of the original parties to the case.

As explained above, the SHWCA failed to produce evidence of a concrete and traceable harm that intervention could have served to protect. Moreover, the regulatory harm that the SHWCA asserts on appeal suffers from a fatal imminence problem because the hypothetical threat of enforcement of an as-yet-nonexistent regulation is insufficient to establish Article III standing. *See Clapper*, 568 U.S. at 410; *In re Volkswagen*, 894 F.3d 1030, 1045 (9th Cir. 2018) (rejecting injury theory based on "speculative" threat of enforcement against private vehicle owner); *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1234–35 (9th Cir. 2017) (rejecting injury theory based on threat of administrative subpoenas that were not certainly impending). Perhaps the district court should have allowed intervention and expanded the scope of the case. Or perhaps not. But the SHWCA would have lacked standing to haul the Forest Service into court at this juncture for as-yet-nonexistent infringements on its members' property rights, and so it lacks standing now to argue that it should be allowed to assert the same argument below after the judgment is vacated and the proceedings reopened.[1]

---

[1] The majority's standing authorities are not on point. The first quoted authority comes from *West Coast Seafood Processors Association v. NRDC*, 643 F.3d 701 (9th Cir. 2011), a case about the "capable of repetition, yet evading review" exception to mootness. The observation that "one must not conflate the issue in the underlying litigation … with the controversy in this appeal over [the] motion to

B.

Next, my colleagues assert that this case was not mooted by the Forest

Service's acquiescence in the judgment because the interagency consultation

process *itself* harms SHWCA's members by making them "uncertain about the

status of their possessory rights to the diversions, which adversely affects their

property values." Mem. Dispo. 4. Setting aside the fact that appellate standing,

not mootness, is at issue when an unsuccessful intervenor appeals the denial of

intervention *after* entry of final judgment, the majority is wrong to rely on a theory

of injury the SHWCA never once articulated or supported with record evidence.

The Humphreys Declaration cannot, even in the summary judgment posture,

reasonably be read to provide evidence of harm through diminution in value:

> Since the District Court's final judgment in December of 2019, I have
> been contacted on several occasions by Forest Service representatives
> from the Sawtooth National Recreational Area. Forest Service
> representatives have sought access to my land to inspect conditions on
> the streams, my diversions, and my property to implement the process
> of consultation. These Forest Service representatives have made it
> clear to me that the Forest Service will require new and specific

intervene" referred to the panel majority's holding that the merits issue (challenges
to a biannual fishing quota) would likely recur while the intervention issue
(mootness brought on by voluntary dismissal of the case by the original party)
likely would not. *Id.* at 705. The second quoted authority merely restates the
principle that parties must have standing to appeal the denial of intervention
independently of the original parties to the case: "Persons denied intervention in
the trial court clearly have standing to appeal the denial of intervention, *but if
intervention was properly denied have no greater right to appeal the judgment
entered between others than other nonparties*." 15A WRIGHT & MILLER, FED.
PRAC. & PROC. JURIS. § 3902.1 (2d ed. April 2021) (emphasis added).

13

operation and maintenance requirements and restrictions on any Ditch Bill easement recognized that are connected to the diversions to our family's private property. The Forest Service is currently in the process of undertaking these measures respecting our property.

Dkt. No. 17-2, at 1–2. This showing is woefully inadequate as evidence that SHWCA's members suffered or will soon suffer a loss in property value because of Forest Service consultation with federal wildlife agencies. Proof of standing on this basis would have required some objective evidence of a loss in value, perhaps in the form of an appraisal, assessment, lost sale, loss of potential buyers, projected loss in agricultural productivity, or the like. Neither the Humphreys Declaration nor any other evidence submitted by the SHWCA supports an inference that the specter of consultation about endangered fish has or will soon cause an objective loss or diminution in property value. Evidence of subjective fear of loss in value would probably not have sufficed, *cf. Clapper*, 568 U.S. at 417–18, but the Humphreys Declaration says nothing even about subjective reactions to consultation.[2]

---

[2] The majority's mootness cases fail to support its conclusion. The first, *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011), merely restated and applied the rule that intervenors must have standing to appeal a judgment independently of the original parties. *Id.* at 482. The second, *United States v. Sprint Communications, Inc.*, 855 F.3d 985 (9th Cir. 2017), was an appeal from the denial of intervention by a qui tam relator who argued that the Attorney General had sued the same defendant to deprive the relator of statutory proceeds from any resulting judgment or settlement. We held that an intervening settlement between the Attorney General and the defendant did not moot the relator's appeal because reversal would afford an "avenue to some remedy." *Id.* at 990. That is not

The majority gleaned the theory that the value of SHWCA members' properties have or could soon be harmed by consultation from outside the record. It may be a good theory. But the SHWCA relied on a different theory: That "Forest Service *control* over the ditches and water rights is the injury." Reply Br. 9 (emphasis added). That is the theory that we must evaluate here because the SHWCA bears the burden on standing. *See TransUnion*, 141 S. Ct. at 2207 ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing."); *Clapper*, 568 U.S. at 412 n.4 ("[I]t is *respondents'* burden to prove their standing by pointing to specific facts."). As explained above, that theory fails because the SHWCA submitted no evidence that the Forest Service has or will soon exercise such regulatory control or that such control would harm its members in concrete and particularized ways.

\*     \*     \*

The SHWCA's failure to demonstrate Article III standing deprives us of jurisdiction over this appeal. Because the majority insists on reaching the merits anyways, I respectfully dissent.

---

surprising, since the relator had standing to challenge the claimed deprivation of significant financial reward. By contrast here, the SHWCA never demonstrated the concrete interest required to establish standing.

15